OPINION
{¶ 1} Gabrielle Smith, appellant, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, in which the court granted the motion for permanent custody filed by Franklin County Children Services ("FCCS"), appellee, with regard to Deonte Bray.
 {¶ 2} On July 25, 1998, appellant, who was 14 years old at the time, gave birth to Deonte. Deonte has various medical problems, including cerebral palsy, resulting in serious developmental delays, such as the inability to walk, talk, or feed himself. Deonte was removed from appellant's care for a period and then returned to her in June 2000. In February 2001, appellant was committed to the Department of Youth Services ("DYS") on a delinquency charge of aggravated assault. At that time, Deonte was placed with his present caregiver, Deborah Sanders, who is appellant's godmother, and her husband, Rodney. On May 2, 2001, Deonte was adjudicated a dependent minor, and temporary custody was granted to FCCS.
 {¶ 3} On October 21, 2002, FCCS filed a motion for permanent custody. Appellant was released from DYS in November 2002, but violated her parole and returned to DYS for 90 days. On October 27, 2003, appellant filed a motion to find R.C. 2151.414(B)(1)(d) unconstitutional, which the trial court overruled on April 26, 2004. On July 27, 2004, a trial on FCCS's motion was held. On August 2, 2004, the trial court granted FCCS's motion, and Deonte was committed to the permanent custody of FCCS for the purpose of adoption. Appellant appeals the judgment of the trial court, asserting the following assignments of error:
[I.] The trial court erred by overruling Appellant's motion to find R.C. 2151.414(B)(1)(d) unconstitutional.
[II.] The trial court erred in finding that the child cannot be placed or should not be placed with Appellant.
[III.] The trial court erred in finding that termination of Appellant's parental rights is in the best interest of the child.
 {¶ 4} Appellant argues in her first assignment of error that the trial court erred by overruling her motion to find R.C. 2151.414(B)(1)(d) unconstitutional. R.C. 2151.414(B)(1)(d) provides:
(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
* * *
(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twentytwo month period ending on or after March 18, 1999.
 {¶ 5} Appellant claims the "12 of 22" time limits in R.C.2151.414(B)(1)(d) violate a parent's due process rights arising under theFourteenth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. Appellant asserts that the statute improperly presumes parental unfitness based solely upon the passage of time when, in fact, the reason the child remains in substitute care for months may be due to circumstances beyond the parent's control. Appellant argues that, in the present case, there was a delay in linking her with the services necessary to accomplish the goals and objectives of the case plan and that the delay was not her fault.
 {¶ 6} When examining legislative enactments, we must afford a strong presumption of constitutionality. Cincinnati v. Langan (1994),94 Ohio App.3d 22. This court has already addressed the constitutionality of Ohio's statutory scheme for determining issues of permanent custody. See In re Thompson (Apr. 26, 2001), Franklin App. No. 00AP-1358 ("Thompson I"). In Thompson I, this court stated as follows:
We agree with appellant that it is apparent that the legislature in Ohio has made the best interest of the child the touchstone of all proceedings addressing a permanent commitment to custody. The legislature has also recognized, however, that when the state seeks to terminate parental custody, parents are entitled to strict due process guarantees under the Fourteenth Amendment to the United States Constitution, including a hearing upon adequate notice, assistance of counsel, and (under most circumstances) the right to be present at the hearing itself. Ohio has accordingly incorporated appropriate due process requirements in the statutes and rules governing juvenile adjudications and dispositions, which are reflected in the extensive and rather intricate statutory framework expressed in R.C. 2151.413 and 2151.414. The statutes appropriately reflect the need to balance the extraordinarily significant rights and interests: parents' rights and interest in the custody, care, nurturing, and rearing of their own children, and the state's parens patriae interest in providing for the security and welfare of children under its jurisdiction, in those unfortunate instances where thorough and impartial proceedings have determined that the parents are no longer in the best position to do so.
We do not find that the balance struck by the legislature in achieving this reconciliation between occasionally incompatible goals has been shown to be constitutionally offensive. Moreover, we do not read the cases cited by appellant as imposing a strict constitutional bias, favoring parental custody under all circumstances. * * *
 {¶ 7} This court has also recently rejected the argument that R.C.2151.414(B)(1)(d), specifically, is unconstitutional. See In re Abram,
Franklin App. No. 04AP-220, 2004-Ohio-5435, at ¶ 12-13; In re Brooks,
Franklin App. No. 04AP-164, 2004-Ohio-3887, at ¶ 31-36 (R.C.2151.414[B][1][d] was constitutional both facially and as applied to the case; despite mother's allegation that FCCS made mistakes during the case that hampered her ability to repair her relationship with her children and to fully comply with the case plan, FCCS did not control her and her actions such that it effectively foreclosed her ability to demonstrate her suitability as a parent).
 {¶ 8} The constitutionality of R.C. 2151.414(B)(1)(d) has also been upheld by several other appellate courts. In In re Workman, Vinton App. No. 02CA574, 2003-Ohio-2220, at ¶ 39-40, the Fourth Appellate District found:
* * * Contrary to appellant's assertion, we believe that inherent within R.C. 2151.414(B)(1)(d) rests the finding that the parent is unable, unsuitable, or unfit to care for the child. If the child has been placed in a children services agency's temporary custody for at least twelve months of the prior twenty-two months, some reason must exist why the child has not been in the parent's care. The reason normally would be because the parent has been unable to demonstrate that the parent is able, suitable, or fit to care for the child. Cf. Troxel [v. Granville] 530 U.S. [57] at 68-69 ("Accordingly, so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children."). R.C.2151.414(B)(1)(d) thus contains an implicit presumption that the parent is unable, unsuitable, or unfit to care for the child. In enacting R.C.2151.414(B)(1)(d), it appears that the Ohio General Assembly intended to provide a presumption that a parent who is unable to be reunified with the child within the twelve-month period is necessarily unable, unsuitable, or unfit to care for the child. See In re Fricke, Allen App. Nos. 1-02-75, 1-02-76, 1-02-77, 2003-Ohio-1116 ("Once the children have been in custody for 12 of the previous 22 months, the parents are presumed to be unfit and all the trial court must find is that granting permanent custody is in the best interests of the children.").
We do not believe that R.C. 2151.414(B)(1)(d) deprives a parent of fundamentally fair procedures. Prior to instituting a permanent custody proceeding under R.C. 2151.414(B)(1)(d), the parent has twelve months to demonstrate that the parent is able, suitable, or fit to care for the child. Thus, the parent is not deprived of the ability to be reunified with the child or to demonstrate the parent's ability, suitability, or fitness to care for the child.
Other appellate districts have found likewise. See, e.g., In reVillaneuva/Hampton Children, Scioto App. No. 2004CA00120, 2004-Ohio-4609, at ¶ 12; In re Gomer, Wyandot App. No. 16-03-19, 2004-Ohio-1723, at ¶ 31. However, we note that some judges in other districts have expressed concern about the constitutionality of R.C. 2151.414(B)(1)(d). See In reKrems, Geauga App. No. 2003-G-2534, 2004-Ohio-2446, at ¶ 54-57 (O'Neill, J., dissenting); In re V.Y., Lorain App. No. 03CA008404, 2004-Ohio-1606, at ¶ 38 (Carr, P.J., concurring).
 {¶ 9} Given this court's prior precedent and the concurrence among other districts who have squarely addressed the issue, we find that R.C.2151.414(B)(1)(d) is not unconstitutional on its face. Further, consistent with our reasoning in In re Brooks, supra, we do not find R.C. 2151.414(B)(1)(d) unconstitutional as applied in the present case. Although appellant claims there was a delay in linking her with the services necessary to accomplish the goals and objectives of the case plan and that the delay was not her fault, our review of the record does not convince us that FCCS controlled her or her actions to such an extent as to foreclose her ability to demonstrate her suitability as a parent. See id., at ¶ 36. For appellant to place the blame on FCCS for her failure to accomplish the goals of her case plan, despite the admitted personal issues of her caseworker, is unpersuasive. Appellant had numerous opportunities and sufficient time to demonstrate her parental fitness and ability to care for Deonte. The record does not support appellant's contention that the child remained in substitute care for the significant period of time in the present case due to circumstances beyond her control or solely under the control of FCCS. Based on the foregoing reasons, we overrule appellant's first assignment of error.
 {¶ 10} Appellant argues in her second assignment of error that the trial court erred in finding that the child could not be placed or should not be placed with her. However, clear and convincing evidence established that Deonte was in the temporary custody of FCCS for 12 or more months of a consecutive 22-month period. Consequently, even though the court addressed the fact that he could not be placed with appellant within a reasonable time or should not be placed with appellant, this finding was unnecessary to the resolution of this case. See In reThompson, Franklin App. No. 02AP-557, 2003-Ohio-580, at ¶ 49. The only consideration in such a case is the best interests of the child, which is determined by consideration of the factors set forth in R.C. 2151.414(D). Id. Therefore, appellant's second assignment of error is overruled.
 {¶ 11} Appellant argues in her third assignment of error that the trial court erred in finding that termination of her parental rights was in the best interest of Deonte. After establishing that the child has been in temporary custody for at least 12 months of a consecutive 22-month period, the juvenile court then must find by clear and convincing evidence that permanent custody is in the child's best interest. See R.C. 2151.414(B)(1). Pursuant to R.C. 2151.414(D), the factors relevant to determining the best interests of the child include, but are not limited to, the following:
(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and outof-home providers, and any other person who may significantly affect the child;
(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
 {¶ 12} An appellate court's review of a trial court's decision finding clear and convincing evidence is limited to whether there is competent, credible evidence in the record supporting the trial court's determination. In re Starkey, 150 Ohio App.3d 612, 2002-Ohio-6892, at ¶ 16. A reviewing court will reverse a finding by the trial court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. In re Rodgers (2000),138 Ohio App.3d 510, 519-520. Clear and convincing evidence is evidence that produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Adoption ofHolcomb (1985), 18 Ohio St.3d 361, 368.
 {¶ 13} Several witnesses presented testimony relevant to the interaction and interrelationship of Deonte with his parents, siblings, relatives, foster parents and out-of-home providers, pursuant to subsection (D)(1) above. Deborah Sanders and her husband are Deonte's foster parents and have cared for Deonte continuously since February 2001. Sanders testified that, during this period, she and her husband have been responsible for all of Deonte's daily needs and for taking him to all of his myriad medical appointments and assessment meetings. Sanders stated that appellant went to only a few of Deonte's appointments early in the case and that appellant has never called her to ask about his upcoming appointments. Sanders also testified that she understands Deonte's personal sign language. She also stated that she is attached to Deonte and wishes to adopt him.
 {¶ 14} Appellant testified that, when she was released from DYS, she spent Mother's Day 2003 with Deonte, but she admitted she did not see Deonte from Mother's Day 2003 to September 2003. During her testimony, it was also revealed that she was unaware of how many medical appointments Deonte has, she has never been to any of Deonte's medical appointments, she was unaware that Deonte went to physical therapy every week, and she has never discussed his medical needs with anyone. Appellant claimed that FCCS was supposed to send her information about Deonte's medical records and appointments, but they never did. Appellant also testified that she has never been to Deonte's school or talked to his teachers, contending that she did not know the phone number to or location of the school. She stated that she was supposed to go to a meeting regarding Deonte's educational assessment, but the cab that was sent for her by FCCS never arrived. Appellant further stated that she does not know Deonte's daily schedule, what time he gets up, what he eats, when he goes to school, or when he goes to bed, and she has never spent an entire day with him since being released from DYS. She claimed she tried to contact Sanders and FCCS on many occasions to discuss seeing Deonte, but she either could not speak with them or they never called her back. Appellant also admitted that she missed one visitation with Deonte after September 2003 because she had a hair appointment.
 {¶ 15} Booker Rene Coats, a supervisor at FCCS who acted as appellant's substitute caseworker, testified that Deonte considers the Sanderses his parents, and he is bonded to them. James Scott, Deonte's lay guardian ad litem, testified that Deonte is attentive to the Sanderses, they communicate with each other, the relationship is nurturing, and Deonte has grown attached to them. He also observed appellant and Deonte interact for a short period, during which he saw appellant communicating with Deonte and Deonte laughing, but he could not form an opinion as to whether there was any attachment between them. However, Scott did testify that appellant told him she wished to be reunified with Deonte and was aware of his medical needs.
 {¶ 16} Suzanne Leslie, a mitigation specialist with the Franklin County Public Defender, testified that she thought appellant was bonded to Deonte, his care was always her focus, and she always wanted his basic needs met. She testified that appellant was very determined not to lose custody of Deonte. When she observed appellant and Deonte together in appellant's home, she saw a relationship between them, Deonte looked to appellant for comfort and support, and he looked to appellant as a caregiver. Likewise, Noel Williams, the president of the Columbus NAACP and appellant's mentor, testified that she witnessed a bonding between appellant and Deonte during visitations.
 {¶ 17} With regard to the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, pursuant to subsection (D)(2), Deonte is young and disabled and is unable to express his wishes. However, the guardian ad litem supported FCCS's request for permanent custody.
 {¶ 18} With regard to the custodial history of Deonte, pursuant to subsection (D)(3), appellant cared for Deonte intermittently for the first two and one-half years of his life, and the Sanderses have cared for Deonte continuously since then. Thus, Deonte has been in the temporary custody of FCCS for 12 or more months of a consecutive 22-month period.
 {¶ 19} With regard to subsection (D)(4), several witnesses gave testimony pertinent to Deonte's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to FCCS. Appellant testified that, as of the time of the hearing, she did not have a job, did not have a driver's license, and lived with her grandmother in a two-story house that was not handicap accessible. She stated that she has never had any training to learn how to handle a special-needs child, but claims she does not need any special training. Appellant admitted that, without a job, she would not be able to pay for Deonte's needs. However, appellant testified that, with assistance, she believed she could do what was necessary to care for Deonte. Appellant stated that she has changed a lot in the past few years. She is no longer angry, and she is willing to listen to others and allow them to help her. Appellant also testified that FCCS has hindered her in her pursuit to provide a secure home for Deonte. She said whenever she tried to contact her caseworker to discuss Deonte, her caseworker was always sick or out of the office and never called her back.
 {¶ 20} Sanders testified that Deonte needs constant attention and care. He cannot eat, walk, or bathe himself without help. She said Deonte has so many doctors' appointments that she had to develop a filing system to keep track of all of them and to stay organized. She also said she is willing to take as much time off from her job as is necessary to make sure Deonte gets to his medical appointments. Sanders stated she has never wavered in her commitment to take care of Deonte and is aware of the financial, emotional, and physical commitment that it will take to care for him. Further, as stated above, she testified that she wishes to adopt Deonte.
 {¶ 21} Coats testified that appellant had not completed her case plan as of the time of the hearing. However, Coats stated that, in August 2003, appellant did express to her a desire to be reunified with Deonte. Appellant also sent Coats a fax that detailed her concerns about transportation and her desire to work with FCCS to be reunified with Deonte.
 {¶ 22} Leslie testified that, since she first met appellant at the end of 2000 in relation to her delinquency case, appellant has become less angry, is determined, more mature, more trusting, and more willing to work with people. Leslie also testified that she had a hard time contacting appellant's caseworker, the caseworker did not work diligently with appellant, and FCCS often failed to link appellant with appropriate services and education. She stated she spoke with various representatives from FCCS about obtaining help for appellant, but FCCS never followed up on any of her suggestions. Leslie further testified that appellant was devoted to Deonte, and, given the appropriate services, appellant would have the ability to properly care for Deonte. Loretta Hillman, appellant's parole officer, likewise testified that appellant grew more mature during the period she knew her.
 {¶ 23} Williams testified that, in the year appellant was in the NAACP mentoring program, appellant underwent positive change. She stated that she believed appellant would be able to raise Deonte with proper support and training. Williams also stated appellant wanted to work with FCCS, but FCCS was not cooperating. She also testified that she called appellant's caseworker herself but failed to get any response until she contacted the caseworker's supervisor, Coats.
 {¶ 24} After reviewing the factors under R.C. 2151.414(D) and the evidence presented with regard to each, we find that there is clear and convincing evidence that the granting of permanent custody to FCCS is in the best interest of Deonte. The evidence supports that Deonte is bonded with the Sanderses, and there was little persuasive evidence that appellant has achieved any significant bonding with Deonte since her release from DYS. The trial court apparently did not find the testimony of appellant, Williams, and Leslie convincing as to appellant's ability to provide a safe, secure, and nurturing environment for Deonte. We must give deference to the findings of the trial court in this respect, as the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use such observations in weighing the credibility of the proffered testimony. Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 25} Importantly, the evidence and testimony established that appellant has failed to take the necessary initiative to establish a bond and parental relationship with Deonte. Despite the opportunities available to educate herself about Deonte's daily lifestyle and activities, appellant has not taken sufficient steps to reinsert herself into Deonte's life and learn what it would take to care for Deonte's many special needs. Although since November 2003 she has participated in fairly consistent visitations, she has failed to go beyond such scheduled visitations to gain knowledge about Deonte's medical, educational, and daily living requirements. Appellant also showed a consistent lack of resourcefulness in obtaining information about Deonte, particularly her failure to find a way to keep apprised of his educational and medical progress. Appellant never contacted Deonte's school or teachers, and she never attended his medical appointments. Her excuses for failing to do so, such as not knowing the phone number to or location of Deonte's school, are entirely unconvincing given the import of what was at stake. In addition, appellant's lack of independent housing, transportation, and employment demonstrates a lack of ability to care for Deonte's intensive, ongoing needs.
 {¶ 26} Although the evidence suggests that appellant's initial caseworker had personal problems that prevented her from fully fulfilling her duties in this case, we are not persuaded that this situation wholly precluded appellant from taking greater steps to become reunified with her son. It is apparent from the testimony of appellant's parole officer and mentor that appellant has taken some positive steps toward achieving a better future for herself, and these are laudable; however, she has not demonstrated that she is willing or able to take the necessary steps toward complete reunification with Deonte. For these reasons, we find there was clear and convincing evidence that it is in the best interest of Deonte to be placed in the permanent custody of FCCS. Appellant's third assignment of error is overruled.
 {¶ 27} Based upon our review of the trial court's decision to grant permanent custody to FCCS and a thorough review of the entire record before the court, we find the trial court had sufficient evidence before it to satisfy the clear and convincing standard. Therefore, the trial court did not err in granting the motion of FCCS for permanent custody.
 {¶ 28} Accordingly, appellant's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
Judgment affirmed.
Petree and Sadler, JJ., concur.