OPINION
{¶ 1} Appellant, J.A. ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, which granted permanent custody of appellant's son, "Baby J," to appellee, Franklin County Children Services ("FCCS"), for purposes of adoption.
 {¶ 2} The record reveals the following facts and procedural history. Baby J was born on January 15, 2005. He is the eighth child born to appellant, and her fourth child with Baby J's father, who was incarcerated at the time of trial and is now deceased. Of appellant's other seven children, five live with appellant's sister and two have been permanently committed to FCCS for purposes of adoption. Baby J has been in foster care since his birth. On June 28, 2005, when Baby J was roughly six months old, FCCS filed a complaint alleging that Baby J was dependent and requesting permanent custody, pursuant to R.C.2151.353 and 2151.414. As well, FCCS filed a motion for a determination that reasonable efforts to prevent removal and to return Baby J to his home were not required, pursuant to R.C.2151.419(A)(2). The trial court granted that motion on June 29, 2006, based upon the fact that appellant's parental rights to a sibling of Baby J had been previously terminated. R.C.2151.419(A)(2)(e).
 {¶ 3} The request for permanent court commitment ("PCC") was tried before a magistrate on August 30-31, 2005. On September 12, 2005, the magistrate issued a decision granting PCC. On September 23, 2005, appellant filed an objection to the magistrate's decision in which she argued that the evidence was insufficient to support the magistrate's decision that PCC was in Baby J's best interest. By judgment entry journalized on April 24, 2006, the trial court overruled appellant's objection and granted FCCS' request. Specifically, the trial court found that PCC is in Baby J's best interest and that Baby J should not be placed with appellant. Appellant timely appealed and advances three assignments of error for our review, as follows:
I. THE TRIAL COURT'S DECISION TERMINATING THE APPELLANT'S PARENTAL RIGHTS TO HER CHILD WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.
II. THE TRIAL COURT ERRED BY TERMINATING THE APPELLANT'S PARENTAL RIGHTS BECAUSE ALLOWING THE PROCEEDINGS TO CONTINUE WITHOUT THE PRESENCE OF THE APPELLANT'S GUARDIAN AD LITEM WAS PLAIN ERROR.
III. THE TRIAL COURT ERRED BY TERMINATING THE APPELLANT'S PARENTAL RIGHTS WHEN THE APPELLANT DID NOT RECEIVE THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE OHIO AND UNITED STATES CONSTITUTIONS.
 {¶ 4} We begin with appellant's first assignment of error. FCCS sought permanent custody pursuant to R.C. 2151.414(B)(1)(a). Pursuant to that statutory provision, a court may grant permanent custody of a child to a public children services agency if the court determines at the hearing, by clear and convincing evidence, (1) that it is in the best interest of the child to grant permanent custody of the child to the agency, and (2) that the child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 5} In the present case, the trial court determined (1) it is in the best interest of Baby J to grant permanent custody of him to FCCS; and (2) Baby J should not be placed with appellant. Because appellant has had her parental rights involuntarily terminated with respect to a sibling of Baby J, the trial court was required to enter a finding that Baby J should not be placed with appellant. R.C. 2151.414(E)(11). Thus, in support of her first assignment of error, appellant attacks only the finding that PCC is in Baby J's best interest. She contends that the trial court focused too much on her previous substance abuse and inability to care for her other children, and not enough on her current situation.
 {¶ 6} In order to terminate parental rights, the movant must prove, by clear and convincing evidence, one of the four factors enumerated in R.C. 2151.414(B)(1) and that the child's best interest is served by a grant of permanent custody to FCCS. Inre M.B., 10th Dist. No. 04AP-755, 2005-Ohio-986. Clear and convincing evidence requires that the proof "`produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" In re Estep (Feb. 8, 2001), 10th Dist. No. 00AP-623, 2001 Ohio App. LEXIS 435, at *4, quotingIn the Matter of Coffman (Sept 7, 2000), 10th Dist. No. 99AP-1376, 2000 Ohio App. LEXIS 4033, citing Cross v. Ledford
(1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus.
 {¶ 7} A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence. In re Andy-Jones, 10th
Dist. No. 03AP-1167, 2004-Ohio-3312, ¶ 28. Judgments supported by some competent, credible evidence going to all essential elements of the case are not against the manifest weight of the evidence. Ibid.; C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578, paragraph one of the syllabus.
 {¶ 8} The findings of a trial court are presumed correct since, as the trier of fact, it is in the best position to weigh the evidence and evaluate the testimony. In re Brown (1994),98 Ohio App.3d 337, 342, 648 N.E.2d 576; In re Hogle (June 27, 2000), 10th Dist. No. 99AP-944. Moreover, "every reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." Karches v. Cincinnati
(1988), 38 Ohio St.3d 12, 19, 526 N.E.2d 1350. "[I]f the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the [juvenile] court's verdict and judgment." Ibid.
 {¶ 9} In determining the best interest of the child, for purposes of a permanent custody motion, the court:
* * * shall consider all relevant factors, including, but not limited to, the following:
(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
R.C. 2151.414(D).
 {¶ 10} First, the trial court was required to consider Baby J's interaction and interrelationship with his mother, his relatives and his foster mother. Baby J's young age precludes direct inquiry of him with respect to his relationships with these individuals. Baby J has been in the foster mother's care since his birth and J.A. has never been responsible for his care. Nonetheless, caseworker Melissa Estrella ("Estrella"), testified that Baby J recognizes J.A. and that she shows him affection. Baby J's foster mother, Malta Regina Nice ("Nice") testified that at times Baby J "lights up" when he sees J.A. during supervised visits.
 {¶ 11} However, Estrella also testified that J.A. has attended only roughly half of the available weekly two-hour supervised visits with Baby J (though some missed visits were due to the baby being ill) and that J.A. frequently seeks to end visits early because two hours is too long for her. Estrella testified that she is concerned for Baby J's safety while he is with his mother; Estrella would not be comfortable leaving J.A. alone with Baby J for five minutes. Estrella related that J.A. has difficulty holding Baby J properly and has nearly dropped Baby J on occasion. She also tried to feed Baby J part of a Wendy's hamburger and french fries when he was four months old despite the fact that he has had problems with a reflux disorder.
 {¶ 12} According to Estrella, who is a licensed social worker employed with FCCS for ten years, J.A. remains concerned primarily with her own needs and not with Baby J's. When asked whether she has ever observed J.A. being able to put Baby J's needs ahead of her own, Estrella replied, "[a]bsolutely not." Nice, too, testified that J.A. cannot stay focused on Baby J during visits because she becomes "distracted by talking about things going on with her." (Tr. Vol. I, 129.)
 {¶ 13} Estrella has attended all but one of J.A.'s two-hour supervised visits with Baby J. Estrella testified that she has never seen J.A. demonstrate the parenting skills that she learned during the parenting classes that she previously completed. In another instance, Estrella testified that only very inconsistently has she seen J.A. demonstrate that she can implement what she has learned. When asked to describe how parenting classes have been helpful and to explain how these classes have helped improve her parenting, J.A. cited only the reassurance she felt in meeting other mothers that are in circumstances similar to her own; she stated that she already knew how to perform the child care skills that were taught in the parenting classes and did not identify any parenting skills with respect to which she felt she had improved as a result of attending the classes. Estrella related that during supervised visits, J.A. has been able to console Baby J on only a few occasions, but usually seeks guidance from others when Baby J cries or becomes fussy. Nice stated that J.A. usually does not change Baby J's diapers during visits.
 {¶ 14} Nice testified that she has cared for Baby J since he was two days old. She explained that he is underdeveloped physically and has trouble gaining weight. At the time of trial, Baby J was being evaluated to determine whether he has cerebral palsy. He is developmentally delayed. He could not yet crawl at the time of trial, despite the fact that he was eight months old, and he could sit up only with difficulty. Nice testified that raising Baby J requires a great deal of intensive, one-on-one interaction including time spent working intensely on his motor skills to encourage him to sit up and push up on his hands. Nice maintains a consistent schedule of feedings every two to three hours, and takes Baby J to doctor visits approximately three times per month. Estrella testified that she is confident that J.A. would not be successful keeping Baby J on a consistent schedule if she were his caregiver.
 {¶ 15} Nice testified that she and her husband have a 16-year-old biological daughter who is usually "inseparable" from Baby J, and the couple also cares for a 2-year-old foster child.
 {¶ 16} The evidence demonstrates that Baby J is well cared for by his foster family and that his medical and developmental needs are being met. He recognizes J.A. and is happy to see her, but she is unable to place his needs before hers and is unable to implement adequate parenting skills during supervised visits. J.A. has never been the primary caregiver for Baby J. This factor weighs in favor of permanent custody.
 {¶ 17} Next, the trial court was required to consider the wishes of the child, as expressed through his guardian ad litem. Baby J's guardian ad litem reported that Baby J is well cared for in foster care. The guardian ad litem opined that appellant has failed to improve in her parenting skills and felt that continuing with the case plan would be a fruitless endeavor and would only delay the inevitable. The guardian ad litem recommended that the trial court grant the PCC request. This factor weighs in favor of permanent custody.
 {¶ 18} Next, the court was required to take into account the custodial history of the child. The evidence clearly demonstrated that Baby J has been in foster care continuously since he left the hospital after his birth. This factor weighs against appellant.
 {¶ 19} Next, the court was required to consider Baby J's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency. "Without doubt, every child needs a legally secure placement. The question is whether or not the parent can provide such a placement." In re J.S., 10th Dist. No. 05AP-615, 2006-Ohio-702, ¶ 27.
 {¶ 20} In this case, the trial court found that a legally secure placement could not be achieved without a grant of permanent custody to FCCS. Sufficient competent, credible evidence supports this conclusion. Baby J has never resided with his mother and the evidence demonstrated that J.A. is unable to meet his day-to-day needs. Estrella testified that J.A.'s sister is unable to care for Baby J because she currently cares for five of J.A.'s other children, all of whom have special needs. According to Estrella there are no other relatives suitable to care for Baby J. Nice testified that she would consider adopting Baby J if that option were available. This factor weighs in favor of permanent custody.
 {¶ 21} Finally, the court was required to consider whether any of the factors in R.C. 2151.414(E)(7) through (11) apply in this case. The court found that R.C. 2151.414(E)(11) applies because appellant has had her parental rights involuntarily terminated with respect to a sibling of Baby J. Appellant has never disputed this fact. This weighs in favor of permanent custody and against appellant.
 {¶ 22} Upon review of the record, we find that the trial court properly determined that it is in Baby J's best interest to grant permanent custody to FCCS, and the court's determination in this regard is supported by clear and convincing evidence. Accordingly, appellant's first assignment of error is overruled.
 {¶ 23} Appellant's second and third assignments of error raise issues that she never raised in her objection to the magistrate's decision. Pursuant to Civ.R. 53(D)(3)(b)(iv), "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ. R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ. R. 53(D)(3)(b)." This rule "imposes a duty to make timely, specific objections in writing to the trial court, identifying any error of fact or law in the magistrate's decision." In re A.V., 10th Dist. No. 05AP-789, 2006-Ohio-3149, ¶ 22, citing O'Connor v. Trans WorldServs., 10th Dist. No. 05AP-560, 2006-Ohio-2747, ¶ 8. Thus, in failing to raise below the issues raised in her second and third assignments of error, appellant has waived all but plain error.
 {¶ 24} "In civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error seriously affects the basic fairness, integrity, or public reputation of the judicial process itself." In re H.M.S., 10th Dist. No. 05AP-613, 2006-Ohio-701, ¶ 6, citing Goldfuss v. Davidson
(1997), 79 Ohio St.3d 116, 679 N.E.2d 1099, syllabus. In the present case, we find no plain error.
 {¶ 25} In support of her second assignment of error, appellant argues that the trial court committed plain error when it proceeded on the second day of trial even though appellant's guardian ad litem was out of town and had previously told the court that he could not be present that day and would have to send another attorney in his place. But appellant has failed to demonstrate that she was prejudiced by the fact that a "stand-in" attorney appeared on behalf of her guardian ad litem on the second day of trial. The attorney who appeared related to the court the guardian ad litem's position that PCC should not be granted and that the court should allow appellant to work further on her case plan. Therefore, the guardian's supportive recommendation was made to the court.
 {¶ 26} More importantly, however, the court had before it overwhelming evidence that it would be in Baby J's best interest for the court to grant PCC, including the opinion from Baby J's guardian ad litem that further case plan efforts would be "futile" and would serve only to delay the "inevitable" granting of PCC to FCCS. Appellant has failed to demonstrate that the basic fairness of her trial was undermined or that its result was affected by the fact that another attorney appeared in place of her guardian ad litem for part of the trial. Accordingly, appellant's second assignment of error is overruled.
 {¶ 27} In her third assignment of error, appellant argues that she received ineffective assistance of counsel because counsel failed to (1) object to the presence of the caseworker throughout the trial; (2) cross-examine Baby J's guardian ad litem; and (3) argue that R.C. 2151.414(B)(1)(d) is unconstitutional as applied to appellant. Again, we review only for plain error.
 {¶ 28} Pursuant to R.C. 2151.352, parents are guaranteed the right to counsel at all stages of a permanent custody proceeding. This right also arises from the guarantees of due process and equal protection contained within the constitutions of Ohio and the United States. State ex rel. Heller v. Miller (1980),61 Ohio St.2d 6, 399 N.E.2d 66, paragraph two of the syllabus. The right to counsel includes the right to effective assistance of counsel. In re Heston (1998), 129 Ohio App.3d 825, 827,719 N.E.2d 93. The test for ineffective assistance of counsel used in criminal cases is equally applicable to actions seeking to force the permanent, involuntary termination of parental custody. Inre McLemore (Mar. 20, 2001), 10th Dist. No. 00AP-974.
 {¶ 29} A properly licensed attorney in Ohio is presumed competent. Vaughn v. Maxwell (1965), 2 Ohio St.2d 299, 301,31 O.O.2d 567, 209 N.E.2d 164. Thus, the burden of showing ineffective assistance of counsel is on the party asserting it.State v. Smith (1985), 17 Ohio St.3d 98, 100, 17 OBR 219,477 N.E.2d 1128. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998),81 Ohio St.3d 673, 675, 693 N.E.2d 267. Tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance of counsel. State v. Carter (1995),72 Ohio St.3d 545, 558, 651 N.E.2d 965 ("judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel"); State v. Carpenter (1996),116 Ohio App.3d 615, 626, 688 N.E.2d 1090 (a court of appeals is to "presume that a broad range of choices, perhaps even disastrous ones, are made on the basis of tactical decisions and do not constitute ineffective assistance").
 {¶ 30} "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."Strickland v. Washington (1984), 466 U.S. 668, 686,104 S.Ct. 2052, 80 L.Ed.2d 674. To succeed on her claim of ineffective assistance of counsel, appellant must satisfy a two-prong test. First, she must demonstrate that her trial counsel's performance was deficient. Id. at 687. This requires a showing that counsel committed errors "so serious that counsel was not functioning as the `counsel' guaranteed by the Sixth Amendment to the United States Constitution." Ibid.
 {¶ 31} But an error by counsel, even if unreasonable under prevailing professional standards, does not warrant setting aside a judgment unless the error affected the outcome of the trial. Id. at 691. Thus, once appellant has shown deficient performance, if she can make such a showing, she must also demonstrate that there exists a reasonable probability that, were it not for her counsel's errors, the result of the trial would have been different.[1] Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Ibid.
 {¶ 32} Though claims of ineffective assistance of counsel are comprised of two components, "there is no reason for a court * * * to approach the inquiry in the same order or even to address both components of the inquiry if the [party asserting the claim] makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Id. at 697.
 {¶ 33} First, appellant argues that her counsel was ineffective for failing to object to Estrella's presence in the courtroom throughout trial. However, appellant does not argue, and cannot demonstrate, that she suffered any actual prejudice as a result of Estrella's presence. There has been no suggestion that Estrella interfered with the proceedings or that her presence had any effect on the testimony of other witnesses. Accordingly, counsel's failure to request a separation of witnesses does not constitute ineffective assistance. In reBrooks, 10th Dist. No. 04AP-164, 2004-Ohio-3887, ¶ 42; see, also, In re Thompson, 10th Dist. No. 02AP-557, 2003-Ohio-580, ¶ 37.
 {¶ 34} Next, appellant argues that her counsel was ineffective for failing to cross-examine Baby J's guardian ad litem. She argues that her counsel should have probed whether Baby J's guardian had relied upon stale information rather than first-hand observations of appellant's more recent interactions with Baby J.
 {¶ 35} An appellate court reviewing an ineffective assistance of counsel claim must not scrutinize trial counsel's strategic decision to engage, or not engage, in a particular line of questioning on cross-examination. State v. Revels, 12th
Dist. No. CA2001-09-223, 2002-Ohio-4231, ¶ 28. This is especially true when, as here, the record reveals no "basis to conclude that cross-examination of the child's guardian ad litem would have revealed any facts that would have changed the outcome of the trial, or would even have been favorable to appellant." Brooks,
supra, at ¶ 40; see, also, State v. Melhado, 10th Dist. No. 02AP-458, 2003-Ohio-4763, appeal not accepted for review,100 Ohio St.3d 1547, 2003-Ohio-6879, 800 N.E.2d 752; State v. Brown
(1988), 38 Ohio St.3d 305, 528 N.E.2d 523; State v. Covington,
10th Dist. No. 02AP-245, 2002-Ohio-7037.
 {¶ 36} In fact, the decision not to cross-examine Baby J's guardian ad litem may well demonstrate counsel's competence and skill, in light of the fact that the guardian expressed strong and unequivocal support for FCCS' motion. If appellant's counsel was aware of no facts that could be brought out in cross-examination to undermine the basis for such support, cross-examination might well have served only to underscore the merits of FCCS' position. Given that there is at least one plausible scenario under which counsel's decision not to cross-examine the guardian ad litem was part of an astute legal strategy, we find no ineffective assistance with respect thereto.
 {¶ 37} Finally, appellant contends that her counsel was ineffective for failure to argue that R.C. 2151.414(B)(1)(d) is unconstitutional as applied in this case. Specifically, she argues that the statute is unconstitutional because the "twelve out of twenty-two months" provision deprived appellant of due process because she "had no control over how long the child was out of her custody and no control over how long these proceedings dragged out." (Brief of Appellant, at 10.)
 {¶ 38} We note initially that this court has previously rejected the same argument relating to the "twelve of twenty-two months" language of R.C. 2151.414(B)(1)(d). See, e.g., In reBray, 10th Dist. No. 04AP-842, 2005-Ohio-1540, ¶ 9; In reC.C., 10th Dist. No. 04AP-883, 2005-Ohio-5163, ¶ 11; In reBrooks, 10th Dist. No. 04AP-164, 2004-Ohio-3887, ¶ 32. More importantly, however, is the fact that PCC was sought and granted based upon R.C. 2151.414(B)(1)(a), not R.C. 2151.414(B)(1)(d). Baby J had not been in FCCS' temporary custody for twelve months when FCCS filed its complaint seeking permanent custody; therefore, R.C. 2151.414(B)(1)(d) could never have been applied to that request. Trial counsel was not ineffective for failing to challenge the constitutionality of a provision not used against appellant.
 {¶ 39} Appellant has failed to demonstrate ineffective assistance of counsel under Strickland and, thus, has failed to demonstrate the existence of plain error. Accordingly, appellant's third assignment of error is overruled.
 {¶ 40} Having overruled all of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.
Judgment affirmed.
French and Mcgrath, JJ., concur.
[1] "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet the test * * * and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Strickland, supra, at 693. (Citation omitted.)