[Cite as *State v. Hudson*, 2014-Ohio-1712.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 13AP-702 |
| | | (C.P.C. No. 12CR-5683) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Michael Hudson, | : | |
| Defendant-Appellant. | : | |

---

D E C I S I O N

Rendered on April 22, 2014

---

*Ron O'Brien*, Prosecuting Attorney, and *Laura R. Swisher*, for appellee.

*Thompson Steward, LLC*, and *Lisa F. Thompson*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas.

BROWN, J.

{¶ 1} Michael Hudson, defendant-appellant, appeals from the judgment of the Franklin County Court of Common Pleas in which the court found him guilty, pursuant to a jury trial, of felonious assault, a violation of R.C. 2903.11 and a second-degree felony; and guilty, pursuant to a bench trial, of having a weapon while under disability, a violation of R.C. 2923.13 and a fourth-degree felony.

{¶ 2} At the time of the incident, Earl Brown ("Brown") and his wife, Sheanna Brown ("Sheanna"), had been married for six years. In the early morning hours of June 8, 2012, Brown went to the home of Sheanna's aunt. Brown knocked, but no one answered the door. When he looked through a window, he saw his wife, Sheanna, naked, with a

male, appellant, who was 17 years old, peering out from another room. Brown recognized appellant as being a friend of Sheanna's family and knew him as "Man Man." Sheanna let Brown into the home, and appellant fled toward the back of the house. Brown followed him and opened a back door. Appellant shot Brown with a revolver. Brown then ran to the front of the house, at which point someone in the home called 911.

{¶ 3}   At the same time, two police officers from the city of Columbus police department, Eric Everhart and Donald Finch, were in their cruiser and parked in a nearby parking lot. After hearing the gunshot, they drove toward the sound. En route, they encountered appellant walking on the street toward the home of Sheanna's aunt. Officer Everhart knew appellant from past encounters. Appellant told them that an occupant of a vehicle had shot a gun and the vehicle had driven away. As the officers left to search for the vehicle, they were dispatched to the residence where Brown was located. Upon arrival, Brown described appellant and called him "Man Man." Several days later, while in the hospital, Brown identified appellant from a photographic array.

{¶ 4}   Appellant was charged in the juvenile division of the Franklin County Court of Common Pleas ("juvenile court") with one count of felonious assault, and a three-year gun specification was later added to the indictment. Appellant was subsequently "bound over" to the general division, where he was indicted on attempted murder with a three-year gun specification, felonious assault with a three-year gun specification, carrying a concealed weapon, and having a weapon while under disability.

{¶ 5}   On the first day of trial, May 14, 2013, the State of Ohio, plaintiff-appellee, dismissed the carrying a concealed weapon charge. A jury trial was held on the felonious assault and attempted murder counts, and a bench trial was held on the having a weapon while under disability count. At the conclusion of evidence, the jury found appellant guilty of felonious assault and the three-year gun specification, not guilty of attempted murder, and guilty of having a weapon while under disability. The court subsequently held a sentencing hearing, sentencing appellant to four years in jail on the felonious assault count and three years in jail on the having a weapon while under disability count, to be served concurrently. The court also sentenced appellant to three years in jail on the gun specification to be served consecutively with the imposed four-year jail term. The court

entered judgment on July 26, 2013. Appellant appeals the judgment, asserting the following assignments of error:

> [I.] The trial court violated Michael Hudson's rights to due process and a fair trial when it entered a judgment of guilt against him, when that finding was against the manifest weight of the evidence.
>
> [II.] The trial court violated Michael Hudson's rights to due process and a fair trial when it entered a judgment of guilt against him, when that finding was not supported by sufficient evidence.
>
> [III.] Michael Hudson's rights to due process and a fair trial were violated due to prosecutorial misconduct.
>
> [IV.] The trial court violated Michael Hudson's rights to due process and a fair trial, and abused its discretion, when it failed to declare a mistrial or give the jury a limiting instruction after the prosecutor's misconduct during closing arguments.
>
> [V.] Michael Hudson's attorney provided him with the [sic] ineffective assistance of counsel and violated his right to due process and a fair trial where defense counsel failed to object to the prosecutor's misconduct during closing arguments.
>
> [VI.] Michael Hudson was denied his right to due process and a fair trial because of cumulative error.

{¶ 6} We will address appellant's first and second assignments of error together, as they are related. Appellant argues in these assignments of error that the trial court's decision finding him guilty of felonious assault was against the manifest weight of the evidence and based upon insufficient evidence. This court's function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In order to undertake this review, we must sit as a "thirteenth juror" and review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). If we find that the fact finder clearly lost its way, we must reverse the conviction and order

a new trial. *Id.* On the other hand, we will not reverse a conviction so long as the state presented substantial evidence for a reasonable trier of fact to conclude that all of the essential elements of the offense were established beyond a reasonable doubt. *State v. Getsy*, 84 Ohio St.3d 180, 193-94 (1998).

{¶ 7} The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. *Thompkins* at 387. When presented with a challenge to the manifest weight of the evidence, an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *Martin* at 175; *State v. Strider-Williams*, 10th Dist. No. 10AP-334, 2010-Ohio-6179, ¶ 12.

{¶ 8} Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *State v. McCrary*, 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 11, citing *State v. Braxton*, 10th Dist. No. 04AP-725, 2005-Ohio-2198, ¶ 15. "[T]hus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *Id.* In that regard, we first examine whether appellant's conviction is supported by the manifest weight of the evidence. *State v. Gravely*, 188 Ohio App.3d 825, 2010-Ohio-3379, ¶ 46 (10th Dist.).

{¶ 9} R.C. 2903.11, felonious assault, provides, in pertinent part:

(A) No person shall knowingly do either of the following:

(1) Cause serious physical harm to another or to another's unborn;

(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

{¶ 10} Appellant's argument is that Brown's testimony was not credible. Appellant points out several alleged inconsistencies in Brown's testimony. Appellant first argues that Brown testified in the juvenile court that he had not been under the influence of any drugs or alcohol at the time of the incident which conflicted with his general division testimony that he had three shots of vodka and marijuana before the incident. However, Brown was cross-examined on this issue. While it is true that he testified at the criminal hearing that he had three shots of vodka and smoked two marijuana "blunts" either the night before or in the early morning hours on the day of the incident, his very brief testimony on the issue at the juvenile hearing was that he does use drugs sometimes but was not under the "influence" of any drugs or alcohol at the time of the incident. These statements are not necessarily inconsistent, given Brown stated he had stopped drinking alcohol several hours before the incident while at a bar, that he did not drink that much, and had not smoked marijuana since before going to the bar. It is believable that Brown had not thought himself to be under the "influence" of vodka or marijuana by the time of the incident, and the jury might have agreed. During cross-examination, defense counsel brought this conflict to the jury's attention, and it apparently did not find the conflict undermined Brown's testimony. Therefore, we find appellant's argument without merit.

{¶ 11} Appellant next points out that Brown testified in juvenile court that he told appellant not to run when he entered the house, which conflicts with his general division testimony that he did not say anything to appellant. While it is true that Brown testified in the juvenile court hearing that he said "don't run," and in the general division hearing he said he did not say anything to appellant, Brown's criminal hearing testimony seemed to be more that he had no actual conversation or confrontation with appellant, given he also testified that he never saw appellant in the house after he entered it. We cannot find that these statements were so incongruous that Brown's testimony should be unbelievable.

{¶ 12} Appellant next questions how Brown could testify that he was shot immediately upon opening the back door, yet he was able to clearly identify the gun and appellant in only that very brief moment. However, Brown addressed the issue of identity

in his testimony. Brown explained that he knew appellant as "Man Man" prior to the incident. He testified that appellant was a friend of his wife's family, and he had known appellant for five years. Thus, Brown's testimony demonstrates that he knew appellant immediately upon sight and did not have to rely upon lengthy reflection at the moment of the shooting.

{¶ 13} Appellant next points out that, although Brown testified he was shot through the lung while standing at the back door and stumbled to the front of the residence, there was no blood found at the back door or leading from the back door to the front of the residence. Appellant essentially asserts the incident did not happen or did not happen the way Brown claimed. However, there is simply no evidence in the record to indicate that the incident happened any other way. Appellant's contention that someone else could have shot Brown because the shooting took place in a high-crime area is similarly lacking, given the void of evidence to support such a bald insinuation. The jury was clearly within its discretion to believe Brown's testimony.

{¶ 14} Appellant further asserts that Brown's identification of appellant during the brief moment between opening the door and being shot was influenced by the description given to him by Officer Everhart at the time of the incident, which was memorialized by Officer Finch in his notes. Brown testified that he gave a description to police when they arrived at the scene that appellant was wearing black shorts, flip flops, and no shirt, and had tissue in his nostrils. On cross-examination, he denied that police described appellant to him. Similarly, Officer Everhart testified that, when he arrived at the scene, Brown said "Man Man" shot him and gave him a description of appellant. He denied that he first gave Brown appellant's description, and he said if the detective's report stated such, it was incorrect. During cross-examination of Officer Finch, Officer Everhart's partner, Finch testified regarding notes he forwarded to the detective on the case. In the notes, Officer Finch indicated, "Officer Everhart mentioned the description of the young male black who was on Loeffler Avenue and Ms. HARVEY stated, 'Oh, that's Man Man.' Officer Everhart asked victim, BROWN, if that was the suspect and he shook his head yes." (Emphases sic.) However, it is not clear from Officer Finch's notes whether Brown first gave any description of his own to prompt Officer Everhart's inquiry regarding appellant's description. Officer Finch's brief notes do not mention whether any discussion took place

before Officer Everhart allegedly described appellant to Brown, but, regardless, the jury had both the notes and Officer Everhart's testimony before it and apparently did not believe that Officer Everhart tainted Brown's identification of appellant as the perpetrator. Given the state of the record, we have no reason to disturb the jury's credibility determination. For the foregoing reasons, we find the trial court's judgment was not against the manifest weight of the evidence or based upon insufficient evidence. Appellant's first and second assignments of error are overruled.

{¶ 15} We address appellant's third, fourth, and fifth assignments of error together, as they are related. Appellant argues in his third assignment that the prosecutor committed misconduct during the trial. Appellant argues in his fourth assignment of error that the trial court violated his rights to due process and a fair trial and abused its discretion when it failed to declare a mistrial or give the jury a limiting instruction after the prosecutor's misconduct during closing arguments. Appellant argues in his fifth assignment of error that his attorney provided him with ineffective assistance of counsel and violated his right to due process and a fair trial when his counsel failed to object to the prosecutor's misconduct during closing arguments.

{¶ 16} " 'The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.' A defendant is entitled to a new trial only when a prosecutor makes improper remarks and those remarks substantially prejudice the defendant." (Citations omitted.) *State v. Norman*, 10th Dist. No. 12AP-505, 2013-Ohio-1908, ¶ 15, quoting *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). " 'A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found appellant guilty.' " *State v. Brooks*, 10th Dist. No. 06AP-74, 2006-Ohio-5784, ¶ 13, quoting *State v. Benge*, 75 Ohio St.3d 136, 141 (1996), citing *State v. Loza*, 71 Ohio St.3d 61, 78 (1994). The Supreme Court of Ohio has cautioned that prosecutorial misconduct constitutes reversible error only in rare instances. *State v. Keenan*, 66 Ohio St.3d 402, 405 (1993). Additionally, a failure to object requires that we review any error under the stringent plain error standard. Crim.R. 52(B); *see State v. Evans*, 63 Ohio St.3d 231, 240 (1992).

{¶ 17} We must review a closing argument in its entirety to determine whether prejudicial error exists. *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 94. A prosecutor's statements are not to be taken out of context and given their most damaging meaning. *Id.* Prosecutors are given considerable latitude in closing argument. *State v. Dillon*, 10th Dist. No. 04AP-1211, 2005-Ohio-4124, ¶ 50. The prosecutor is entitled to comment on " ' "what the evidence has shown and what reasonable inferences may be drawn therefrom." ' " *State v. Butler*, 10th Dist. No. 03AP-800, 2005-Ohio-579, ¶ 11, quoting *State v. Lott*, 51 Ohio St.3d 160, 165 (1990), quoting *State v. Stephens*, 24 Ohio St.2d 76, 82 (1970). A prosecutor may state his opinion if it is based on the evidence presented at trial. *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 213. A prosecutor may not state his personal belief regarding the credibility of a witness. *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 117. However, a prosecutor may comment upon the testimony of witnesses and suggest the conclusions to be drawn. *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, ¶ 116. A prosecutor may even point out a lack of credibility of a witness, if the record supports such a claim. *See State v. Powell*, 177 Ohio App.3d 825, 2008-Ohio-4171, ¶ 45 (4th Dist.). To improperly vouch for a witness, a prosecutor must have implied knowledge of facts outside the record or placed the prosecutor's own personal credibility in issue. *Jackson* at ¶ 117.

{¶ 18} In the present case, appellant raises several instances of prosecutorial misconduct that form the bases for all three assignments of error. Appellant first asserts that the prosecutor vouched for the veracity of the state's witnesses in its closing argument when it told the jury that Brown, Officers Everhart and Finch were telling the truth. With regard to Brown, appellant points out that the prosecutor said that he was "telling the truth" and was "honest to a fault." The full context of the above quotes are, respectively, as follows:

> Defense attorney tried to trick [Brown] in saying, well, you lied in the past. You told him before you weren't drinking. He said, well, I guess I said that. I don't know why I said that because I was drinking that night. Wasn't drunk. Wasn't wasted. I knew who I saw. He went out there knowing that he was using marijuana earlier that evening. He owned that. He didn't shy away from it. He was *telling the truth*.
>
> * * *

> This man [Brown] who's going to be so tough and lie and do
> all these things takes the stand, *honest to a fault*, tells you,
> yeah, I was smoking weed before I went to the bar.

(Emphasis added.) (Tr. 190-91, 220.)

{¶ 19} However, these statements do not amount to prosecutorial misconduct. Neither statement was directed toward Brown's general propensity to tell the truth or the truthfulness of his testimony. Instead, the statements were limited to his truthfulness of his admission that he had been using drugs and alcohol on the night in question. What is more, it was defense counsel who was seeking to discredit Brown by showing that he was impaired by drugs and alcohol and it was defense counsel who was seeking to prove to the jury that Brown was using drugs and alcohol on the night in question. In essence, by the prosecutor pointing out that Brown was telling the truth about his drug and alcohol usage, the prosecutor was agreeing with the precise point the defense was trying to make during cross-examination. Furthermore, vouching only occurs when the prosecutor implies knowledge of facts outside the record or places his or her personal credibility in issue. *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 232. Such is not the case here. The prosecutor's statements were not impliedly based upon knowledge of facts outside the record, and he did not place his own personal credibility in issue. Instead, the state was commenting on Brown's testimony and suggesting a conclusion that could be drawn from the evidence. *See State v. Thompson*, 87 Ohio App.3d 570, 582 (9th Dist.1993) (the state is permitted to comment on the testimony of witnesses and the evidence and may suggest a logical conclusion that can be drawn therefrom). Although arguably in the form of a personal opinion, the prosecutor was actually suggesting that one could logically conclude that Brown was being truthful about his drug and alcohol usage because such an admission is potentially damaging to him. Therefore, we find the prosecutor's statements did not arise to the level of misconduct.

{¶ 20} With regard to Officers Everhart and Finch, the prosecutor stated that "[i]t's hard for me to believe that those two officers were sitting here taking the stand saying what they thought needed to be said to help [Brown]. * * * They're not lying to help Earl Brown." (Tr. 216-17.) Appellant argues that when the state vouched for the veracity of these witnesses, it impermissibly threw the full weight and force of the state behind the

witnesses. Initially, we point out the prosecutor's comments occurred during rebuttal in response to several attacks on the officers' truthfulness during defense counsel's closing argument. *See, e.g., State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, ¶ 95 (prosecutor's comments did not impermissibly vouch for the truthfulness of a police officer's testimony when they were in response to the defense's attack on the officer's credibility); *Loza* at 78 (both the state and defense have latitude in responding to the arguments of opposing counsel); *State v. Foster*, 8th Dist. No. 85790, 2005-Ohio-5716, ¶ 72 (no prosecutorial misconduct when prosecutor pointed out that witness had a motive to tell the truth in response to defense counsel's assertion that witness had a motive to testify falsely); *State v. Wilson*, 12th Dist. No CA2001-09-072, 2002-Ohio-4709, ¶ 67 (a prosecutor's latitude in closing argument is wider on rebuttal where the prosecutor has room to respond to closing argument of defense counsel). Furthermore, immediately before his comment that the police were not lying to help Brown, the prosecutor stated, "Why would a cop take the stand and try to protect some guy who has a history?" (Tr. 217.) Thus, the statements regarding the police officers' credibility were tied to evidence presented showing Brown had a criminal history.

{¶ 21} Appellant next contends that the prosecutor improperly commented that the defense failed to call a witness, which directly contravenes its burden of proving each element of the offense beyond reasonable doubt. Specifically, appellant points to the prosecutor's statement regarding Brown's wife, "I didn't see the defense subpoenaing her." (Tr. 215.) Appellant maintains that commenting on the lack of evidence adduced by the defense impermissibly shifts the burden of proof from itself to the defense.

{¶ 22} However, the Supreme Court of Ohio has clearly held that a prosecution's comments on the defense's failure to provide evidence to support a theory of a case does not necessarily shift the burden of proof:

> It is long-standing precedent that the state may comment upon a defendant's failure to offer evidence in support of its case. Such comments do not imply that the burden of proof has shifted to the defense, nor do they necessarily constitute a penalty on the defendant's exercise of his Fifth Amendment right to remain silent. A prosecutor may jeopardize the integrity of a trial by commenting on a criminal defendant's decision not to testify. Nevertheless, the prosecutor is not precluded from challenging the weight of the evidence offered

in support of an exculpatory theory presented by the defense. Neither must the state, in order to satisfy its own burden of proof, disprove every speculative set of possibly exculpatory circumstances a defendant can suggest, nor refrain from arguing the defendant's failure to provide evidence to support proffered theories of excuse or innocence.

(Citations omitted.)  *State v. Collins*, 89 Ohio St.3d 524, 527 (2000). Thus, a prosecutor is permitted to highlight the lack of evidence supporting a defendant's theory of the case.

{¶ 23}  This is precisely what happened in the instant case. Appellant's argument at trial was that he did not shoot Brown or the shooting did not occur where and how Brown claimed. In defense counsel's closing argument, appellant's attorney argued that there was no evidence of blood at the rear of the house, no testing for gunpowder residue, and no gun, bullet casings or spent bullets recovered at the scene. In arguing that there was no evidence that the incident happened as Brown testified, defense counsel also pointed out that appellant was not the only person who could describe what happened; rather, Brown's wife, Sheanna, was there too, and she never testified.  It was this argument by defense counsel which the prosecutor was rebutting when he said, "Do you think [Brown] wanted to come in and go through a trial and prosecute somebody who his wife was involved with, who his wife didn't even want to call 911? Do you expect her to come down to court? I didn't see the defense subpoenaing her. He can say, oh, they didn't march these people down here, his family members."  (Tr. 214-15.) Thus, it is clear that the prosecutor was rebutting defense counsel's insinuations by pointing out that defense counsel could have also called her as a witness if appellant believed she would provide exculpatory evidence. By doing so, the prosecutor was highlighting the lack of evidence to support appellant's theory that the incident occurred other than how Brown testified. Therefore, this argument is without merit. For the foregoing reasons, we find the prosecutor did not engage in prosecutorial misconduct. Because appellant's third, fourth, and fifth assignments of error are all based upon prosecutorial misconduct, and we have found no error, these assignments of error are overruled.

{¶ 24}  Appellant argues in his sixth assignment of error that he was denied his right to due process and a fair trial because of cumulative error. Appellant argues that the collective errors regarding manifest weight of the evidence, insufficiency of the evidence, prosecutorial misconduct, and his trial counsel's ineffectiveness combined to deny him his

rights to due process and a fair trial. However, as we have found no error above with regard to any of appellant's arguments, we can find no cumulative error. Therefore, appellant was not denied due process, and his sixth assignment of error is overruled.

{¶ 25} Accordingly, appellant's six assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

DORRIAN and O'GRADY, JJ., concur.

_____