[Cite as *State v. Fair*, 2014-Ohio-2788.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

    Plaintiff-Appellee,                       :

                              No. 13AP-901

v.                                               :         (C.P.C. No. 13CR-1026)

Gregory  T. Fair,                                :           (REGULAR CALENDAR)

    Defendant-Appellant.                      :

---

D E C I S I O N

Rendered on June 26, 2014

---

*Ron O'Brien*, Prosecuting Attorney, and *Laura R. Swisher*, for appellee.

*Siewert & Gjostein Co. LPA*, and *Thomas A. Gjostein*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

O'GRADY, J.

{¶ 1} Defendant-appellant, Gregory T. Fair, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas. For the following reasons, we affirm in part and reverse in part.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2} Appellant was indicted on one count of fourth-degree felony theft and six counts of fifth-degree felony theft, all in violation of R.C. 2913.02. The matter proceeded to a jury trial where the following evidence was presented.

{¶ 3} William Marcum testified he and Ryan Cox are the co-owners of Columbus Contracting Company ("CCC"). CCC replaces roofs that have suffered storm damage.

Appellant was employed as a sales representative, and his job was to go door-to-door in neighborhoods affected by storms to solicit business. Appellant would initiate contact with customers and offer them roof inspections by CCC. If a customer was interested, Marcum or Cox would inspect the roof. If the roof was damaged, appellant would discuss options with the customer, such as contracting with CCC to replace the roof and help the customer with the insurance claim process. Appellant was responsible for securing contracts for roofing jobs. When a customer paid for CCC's services, he could pay through the mail or submit payment to appellant for him to pass along to CCC. Appellant was supposed to turn money from customers over to CCC within 24 hours.

{¶ 4} Cox corroborated Marcum's testimony about appellant's employment and training. According to Cox, once a customer was in contract, that customer would deal directly with appellant throughout the duration of the roofing job. Appellant was trained if a customer submitted payment directly to him, "[i]mmediately upon receiving the check, it was supposed to be taken to [CCC]. The * * * sales rep was not supposed to hold that check on their person any longer than physically necessary." (Tr. Vol. III, 386.) Appellant was also aware that all checks were to be made payable to CCC. Cox testified about a particular customer, Earnest Tate. Tate came into CCC's office and showed Cox a contract that Cox had never seen before. Appellant did not make CCC aware that Tate was a customer. Tate complained that he paid appellant, but no work had been done. Cox immediately launched an internal investigation, which revealed payment discrepancies on a number of appellant's accounts. Appellant initially denied receiving money from customers and not turning it over to CCC. Appellant eventually admitted taking money from customers, yet he claimed the money was loaned to him. Cox and Marcum shared the findings from their internal investigation with the Columbus Police Department.

{¶ 5} Tate testified that appellant came to his house in June or July 2012 to discuss CCC replacing his roof. Tate already had his insurance company inspect the roof, and that company approved around $8,000, minus Tate's $1,000 deductible, for repairs. Tate told appellant he wanted to keep $1,000 of his insurance money so he could replace interior ceilings, which were also damaged due to his leaky roof. Tate signed a contract presented to him by appellant. Tate received a check from his insurance company, and

appellant drove Tate and his wife to the bank to cash it. The check was for "4,000 some odd dollars." (Tr. Vol. I, 91.) Tate testified he kept $1,000 for his interior repairs, and he gave the rest, in cash, to appellant as a payment under the contract for the roof repair at his home. Tate denied that the money he gave appellant was a loan. Work never began on the roof. Tate called appellant several times, and appellant stalled and provided excuses. Finally, after six weeks or more, Tate went to CCC's office to complain. The individuals he encountered at CCC told him they knew nothing about his situation.

{¶ 6} John Myers, Sr., testified he met appellant around July 2012. Appellant said he was from CCC and they discussed replacing Myers' roof. Myers signed a contract, and his roof was replaced one or two months later. Myers paid for the job with three checks. Two were made payable to CCC, and the final installment of $2,100 was made payable to appellant. Myers explained appellant offered him a discount if he made the check payable to appellant. Myers' understanding was the $2,100 was payment to satisfy his balance due to CCC. He did not think appellant was borrowing the money and indicated it was not a loan. Myers found out that appellant did not use the money to pay off his balance when CCC called him and requested a payment. CCC told Myers the company did not receive his last installment.

{¶ 7} Brad Hennen testified appellant approached him in March or April 2012. Appellant secured a contract between Hennen and CCC. Hennen made two payments to CCC, but made a third check payable to appellant. Hennen testified appellant told him, "if I made the final check directly out to him, he could apply these credits that he had accumulated, and then he could zero out my balance with that check and the credits * * *. That would take care of the deductible that I owed." (Tr. Vol. II, 203.) Hennen said the check was not a loan to appellant. He intended the final payment go to CCC. Hennen's roof was replaced, but CCC did not receive his final payment.

{¶ 8} Robert Johnson testified appellant approached him as a representative of CCC. Johnson entered into a contract in April 2012, and CCC replaced his roof. Johnson wrote three checks to pay for the job. The first two were made payable to CCC, and the third check was made payable to appellant. Early on, appellant told Johnson that CCC would give him $200 for each referral he made to a new customer. Johnson made three referrals, so he expected $600. Appellant later told Johnson that CCC would not

compensate him for the referrals, but appellant made Johnson a "promise" so appellant would compensate him personally. (Tr. Vol. II, 228.) If Johnson made the last check payable to appellant less what he expected for the referrals, appellant would put the difference with the check and submit both payments to CCC. Johnson found out that his last payment did not reach CCC because CCC called him and sent him an invoice. Johnson denied loaning money to appellant.

{¶ 9} Michael Thurman testified appellant came to his house around July or August 2012. Thurman signed a contract with CCC, and his roof was completed. Thurman submitted two payments to CCC. The final payment for his roof, in the amount of $1,500, was made by check payable to appellant. Thurman explained appellant offered him a discount, which would come out of a bonus appellant was expecting. Appellant would cash Thurman's check, combine it with some of appellant's bonus money, and submit payment to CCC. Thurman believed he was paying off his balance due to CCC. He did not think he was loaning money to appellant. Thurman found out appellant did not pay CCC on his behalf when he received a call from Cox.

{¶ 10} Samuel Tambi testified he met appellant in May 2012 when appellant came to his house and offered him a roof inspection. Tambi entered into contract with CCC and work on his roof was completed. To satisfy the contract, Tambi wrote two checks payable to CCC. Tambi made a third check for $2,500 payable to appellant. That amount was not equivalent to the total still due under the contract, which was $3,195.15. Tambi explained appellant told him appellant had credits built up with CCC that appellant would apply to satisfy the remainder of the balance due. Tambi intended the third check to be payment to CCC, and he wrote on the memo line: "Last installment for roofing." (Tr. Vol. III, 352.) Tambi found out appellant did not put the last check toward the balance due to CCC when Cox called him to discuss the matter.

{¶ 11} Appellant did not call any witnesses to testify at trial. The jury returned a verdict finding appellant guilty of six counts of theft. The trial court entered a nolle prosequi for the remaining count. Appellant was sentenced, and this appeal followed.

## II. ASSIGNMENTS OF ERROR

{¶ 12} Appellant presents us with the following four assignments of error for our review:

FIRST ASSIGNMENT OF ERROR

APPELLANT'S CONVICTION WAS NOT SUPPORTED BY
THE SUFFICIENCY OF THE EVIDENCE IN VIOLATION OF
THE DUE PROCESS CLAUSE OF THE FOURTEENTH
AMENDMENT TO THE U.S. CONSTITUTION AND
ARTICLE I, SECTIONS 1 & 16 OF THE OHIO
CONSTITUTION AND THE CONVICTION WAS ALSO
AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

SECOND ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN SENTENCING THE
DEFENDANT, IMPROPERLY, TO CONSECUTIVE
SENTENCES ON COUNT NUMBERS 1 AND 3 OF THE
INDICTMENT, REVISED CODE §2929.11, §2929.12 AND
§2929.14.

THIRD ASSIGNMENT OF ERROR

THE ASSISTANT PROSECUTOR COMMITTED MIS-
CONDUCT, SERIOUSLY PREJUDICING SUBSTANTIAL
RIGHTS OF THE DEFENDANT AND AFFECTING THE
INTEGRITY OF THE JUDICIAL PROCEEDINGS, DURING
REBUTTAL CLOSING ARGUMENT BY INFERENCES THAT
THE DEFENSE ATTORNEY'S ARGUMENTS, THEORIES OR
CASE WERE NOT TRUTHFUL.

FOURTH ASSIGNMENT OF ERROR

THE TRIAL COURT COMMITTED PREJUDICIAL ERROR
IN DENYING THE MOTION FOR MISTRIAL SUBSEQUENT
TO THE TESTIMONY BY A WITNESS FOR THE
PROSECUTION WHICH EXPOSED A VIOLATION OF
DISCOVERY MANDATED BY RULE 16 OF THE RULES OF
CRIMINAL PROCEDURE.

## III. DISCUSSION

{¶ 13} In his first assignment of error, appellant argues his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. We disagree.

{¶ 14} "Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict." *State v. Cassell*, 10th

Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 36, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, superseded by constitutional amendment on other grounds as recognized in *State v. Smith*, 80 Ohio St.3d 89, 102 (1997).

{¶ 15} "While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *Cassell* at ¶ 38, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25, citing *Thompkins* at 386-87. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). This discretionary authority " 'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *Martin* at 175.

{¶ 16} Furthermore, " '[w]hile the jury may take note of the inconsistencies and resolve or discount them accordingly, * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' " *State v. Gullick*, 10th Dist. No. 13AP-317, 2014-Ohio-1642, ¶ 10, quoting *State v. Nivens*, 10th Dist. No. 95APA09-1236 (May 28, 1996). "A jury, as the finder of fact and the sole judge of the weight of the evidence and the credibility of the witnesses, may believe or disbelieve all, part, or none of a witness's testimony." *Id.*, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964); *State v. Jackson*, 10th Dist. No. 01AP-973 (Mar. 19, 2002); *State v. Chandler*,

10th Dist. No. 05AP-415, 2006-Ohio-2070, ¶ 13; *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21.

{¶ 17} Appellant does not argue the state failed to present evidence establishing all the elements of the theft offenses for which he was convicted. Instead, appellant argues that a number of issues undermine his convictions and establish the jury clearly lost its way. He focuses on inconsistencies between the testimony of Marcum and the testimony of Cox and contends "conflicting testimony about standards and procedures with [CCC] bears direct relevance to the conviction on Count 1 of the Indictment for Tate, because [CCC] claimed to possess no documentation of a contract for him." (Appellant's Brief, 7-8.) Appellant complains that copies of contracts admitted into evidence were blurry with dates and dollar amounts the witnesses could not read and that no witness could testify about the date and time appellant allegedly received payment. Further, there was no testimony about any endorsements of the checks. Lastly, while appellant complains there was no evidence presented to support he intended to permanently deprive the victims of the money he collected, he also points out that he "admitted making a mistake to his employer and [the police], as well as, numerous victims, including promises to repay them." (Appellant's Brief, 9.) Essentially, appellant is arguing that the victims loaned him money, which was one of his theories of defense at trial.

{¶ 18} Here, we find the inconsistencies regarding business operations testified to by Marcum and Cox inconsequential. Marcum and Cox provided background about appellant's employment, how the thefts came to light at CCC, and CCC's internal investigation. The testimony of the six victims and the evidence presented through them established the theft offenses. Also, CCC did not have record of the contract with Tate because appellant did not provide the contract to his employer in accordance with normal procedure. Therefore, we find the inconsistencies in Marcum and Cox's testimonies do not undermine appellant's convictions.

{¶ 19} Appellant's comments about blurry copies of contracts and a lack of testimony establishing dates, times, and dollar amounts are also unpersuasive. Numerous witnesses testified that the events in question happened during 2012, and the general time frame is not in dispute. The victims testified about amounts of money they gave appellant, and copies of the checks were reviewed at trial and admitted into

evidence; thus, whether or not the witnesses could read the dollar amounts off the contracts is not particularly important. Appellant's comment that there was "no testimony to any endorsements of the checks" suggests he believes the state did not establish he cashed or deposited the checks. (Appellant's Brief, 8.) We disagree. All of the victims who wrote checks payable to appellant testified none of the money arrived at CCC. Copies of the checks admitted into evidence were front and back copies showing the endorsements bearing appellant's signature. The jury also had copies of the contracts with appellant's signature for comparison. Furthermore, appellant admits he promised to repay some of the victims. Accordingly, we reject the notion that more specific testimony about the endorsements of the checks was necessary.

{¶ 20} Finally, appellant claims he did not intend to permanently deprive the victims of their money, and the money was loaned to him in exchange for a discount. The evidence does not support appellant's position. All but one of the victims specifically testified they did not intend to loan appellant the money; instead, they intended the money go to CCC, and it never arrived. Additionally, the time frame that appellant began to offer to pay the victims back largely coincides with the time he was being investigated by CCC and the police. Appellant's contention that the money was loaned to him lacks merit.

{¶ 21} After reviewing the entire record, we find a rational jury could have found the essential elements of the crimes proven beyond a reasonable doubt. Accordingly, appellant's first assignment of error is overruled.

{¶ 22} In appellant's second assignment of error, he alleges there were a number of flaws in the sentencing process. Appellant argues one such flaw is that the trial court neglected to make the findings required by R.C. 2929.14(C)(4) before imposing consecutive terms of imprisonment upon appellant. The state does not argue the trial court made the mandatory findings. Instead, the state points out that appellant did not object to his sentence, and argues that we should not find plain error occurred during sentencing. We reject the state's position and find that the trial court, in fact, did not make the R.C. 2929.14(C)(4) finding before imposing consecutive terms. "It is established in this district that 'when the record demonstrates that the trial court failed to make the findings required by R.C. 2929.14(C)(4) before imposing consecutive sentences on

multiple offenses, "appellant's sentence is contrary to law and constitutes plain error." ' " *State v. Revels*, 10th Dist. No. 12AP-831, 2014-Ohio-795, ¶ 11, quoting *State v. Ayers*, 10th Dist. No. 13AP-371, 2014-Ohio-276, ¶ 15, quoting *State v. Wilson*, 10th Dist. No. 12AP-551, 2013-Ohio-1520, ¶ 18; *State v. Boynton*, 10th Dist. No. 12AP-975, 2013-Ohio-3794, ¶ 12; *see also State v. Bailey*, 10th Dist. No. 12AP-699, 2013-Ohio-3596, ¶ 46; *State v. Hunter*, 10th Dist. No. 13AP-196, 2013-Ohio-4013, ¶ 9; *State v. Castlin*, 10th Dist. No. 13AP-331, 2013-Ohio-4889, ¶ 8-9; *State v. Phipps*, 10th Dist. No. 13AP-351, 2013-Ohio-5546, ¶ 15; *State v. Bender*, 10th Dist. No. 12AP-934, 2013-Ohio-2777, ¶ 7.

{¶ 23} The trial court only specifically discussed appellant's criminal history before sentencing him to serve consecutive terms. Therefore, the trial court fell short of its obligation under R.C. 2929.14(C)(4), which "requires the trial court to make three findings before imposing consecutive sentences: (1) that consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) that one of the subsections (a), (b), or (c) apply." *State v. Zonars*, 10th Dist. No. 13AP-735, 2014-Ohio-2023, ¶ 28, citing *State v. Roush*, 10th Dist. No. 12AP-201, 2013-Ohio-3162, ¶ 76. Accordingly, we must remand this matter to the trial court to consider whether consecutive sentences are appropriate, pursuant to R.C. 2929.14(C)(4), and, if so, to enter the proper findings on the record. *Revels* at ¶ 11, citing *Boynton* at ¶ 12; *State v. Corker*, 10th Dist. No. 13AP-264, 2013-Ohio-5446, ¶ 38, citing *State v. Bass*, 10th Dist. No. 12AP-622, 2013-Ohio-4503, ¶ 44.

{¶ 24} Because the trial court's failure to comply with R.C. 2929.14(C)(4) requires a remand for resentencing, there is no reason to address appellant's remaining arguments pertaining to sentencing as they are moot. Accordingly, appellant's second assignment of error is sustained.

{¶ 25} In his third assignment of error, appellant argues the assistant prosecuting attorney committed misconduct by insinuating during closing arguments that the defense developed by appellant at trial was not truthful.

{¶ 26} The test for prosecutorial misconduct during closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial

rights of the defendant. *State v. Hudson*, 10th Dist. No. 13AP-702, 2014-Ohio-1712, ¶ 16, citing *State v. Norman*, 10th Dist. No. 12AP-505, 2013-Ohio-1908, ¶ 15; *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). Prosecutorial misconduct constitutes reversible error only in rare instances. *Id.*, citing *State v. Keenan*, 66 Ohio St.3d 402, 405 (1993). " ' "A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found appellant guilty." ' " *Id.*, quoting *State v. Brooks*, 10th Dist. No. 06AP-74, 2006-Ohio-5784, ¶ 13, quoting *State v. Benge*, 75 Ohio St.3d 136, 141 (1996), citing *State v. Loza*, 71 Ohio St.3d 61, 78 (1994).

{¶ 27} In support of his contention, appellant directs our attention to the following three emphasized comments:

> You know, we do any kind of job, we always try to create a metaphor for what we do, try and explain it another way to people. There's like a lot of metaphors out there for what we do here. And you know, I mean, *some people, oh, it's theater, it's war, it's sport.* I mean, all kinds of things you could describe this as, but it's not. This isn't theater. This isn't a game. This isn't war. There's an expression, "*The first causality* [sic] *in war is the truth.*" And say, no, this is -- this is, you know, a fact finding exercise. That's what we're doing here. There's no metaphor for this. There's no other way to explain it. *We're not here for entertainment. We're not here for a game.*
>
> Now, we're here to find what really happened, what is the truth or what happened. That's why there's this burden of reasonable doubt. We want to know what really happened in this case.

(Emphasis added.) (Tr. Vol. IV, 569-70.)

{¶ 28} Appellant's references to portions of the assistant prosecutor's closing arguments were taken out of context. The assistant prosecutor did not reference any aspect of appellant's defense when making the comments in question. It appears the assistant prosecutor was merely trying to describe the criminal trial process in a way that might resonate with the jury. After reviewing the remarks in full, we do not find them to be improper or prejudicial. Furthermore, appellant did not object to the comments when they were made and, thus, forfeited all but plain error. *State v. Kenney*, 10th Dist. No. 09AP-231, 2010-Ohio-3740, ¶ 11, citing *State v. Williams,* 79 Ohio St.3d 1, 12 (1997).

{¶ 29} Appellant does not argue and we do not find that, absent the comments in question, it is clear beyond a reasonable doubt the jury would not have found appellant guilty. Applying the plain error standard, we conclude the assistant prosecutor did not commit misconduct during closing. Accordingly, appellant's third assignment of error is overruled.

{¶ 30} In appellant's fourth assignment of error, he asserts the trial court erred by denying his motion for a mistrial. Appellant made the motion during Cox's testimony. Cox was discussing documents available through CCC's internet portal. Appellant subpoenaed any and all portal records previous to trial, but Cox did not produce everything available claiming he was not given enough time. Cox offered to access and display the information during trial, which prompted appellant's motion for a mistrial. In an earlier sidebar on the issue, appellant's trial counsel stated, "I'm more than satisfied with the evidence that we have in our favor." (Tr. Vol. III, 458.) Counsel explained it was part of her trial strategy to emphasize for the jury the lack of evidence against appellant and that Cox was not cooperative with the defense. Appellant argues on appeal "the documents were subpoenaed but not provided and the attempt to testify to discoverable material was highly prejudicial. The court overruled the motion for mistrial, which violated the holding and spirit of *Brady v. Maryland 373 U.S. 83 (1963)*, as well as Rule 16(B) of the Rules of Criminal Procedure." (Appellant's Brief, 18.) We disagree.

{¶ 31} The decision whether or not to grant a mistrial rests with the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. *State v. Bigsby*, 7th Dist. No. 12 MA 74, 2013-Ohio-5641, ¶ 58, citing *State v. Sage*, 31 Ohio St.3d 173, 182 (1997). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *State v. Jones*, 10th Dist. No. 12AP-1091, 2014-Ohio-674, ¶ 10, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). " 'A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened, unless the substantial rights of the accused or the prosecution are adversely affected.' " *State v. Walburg*, 10th Dist. No. 10AP-1087, 2011-Ohio-4762, ¶ 52, quoting *State v. Reynolds*, 49 Ohio App.3d 27, 33 (2d Dist.1988). A mistrial needs to be declared only when the ends of justice so require and a fair trial is no longer possible. *State v. Hunt*,

10th Dist. No. 12AP-103, 2013-Ohio-5326, ¶ 69, citing *State v. Harris*, 10th Dist. No. 04AP-612, 2005-Ohio-4676, ¶ 27; *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991). "Our review of a decision on a motion for mistrial defers to the trial court's judgment because it is in the best position to determine whether the circumstances warrant declaration of a mistrial." *State v. McKinney*, 10th Dist. No. 13AP-211, 2013-Ohio-5394, ¶ 12, citing *State v. Glover*, 35 Ohio St.3d 18, 19 (1988).

{¶ 32} Crim.R. 16(B) states: "Upon receipt of a written demand for discovery by the defendant, * * * the prosecuting attorney shall provide * * * items related to the particular case * * * within the possession of, or reasonably available to the state." Appellant does not allege the documentation in question was ever the subject of a written demand for discovery submitted to the state, or that the documentation was possessed by or reasonably available to the state. Appellant attempted to obtain the documentation directly from CCC via subpoena. Cox admitted the company did not fully comply with appellant's request for any and all portal records. However, appellant's trial counsel was satisfied with the documentation received, and was content to paint Cox as uncooperative. Under these circumstances and considering the state's lack of involvement, we do not find appellant's accusations, pursuant to Crim.R. 16(B), persuasive.

{¶ 33} Appellant's reference to the state's obligation under *Brady* is erroneous. "*Brady* only applies when a defendant discovers post-trial that the State has withheld exculpatory evidence." *State v. Vu*, 9th Dist. No. 11CA0042-M, 2012-Ohio-746, ¶ 39. That is not the case here. To the extent appellant is claiming the state withheld evidence, he was aware of it before and during trial. Therefore, *Brady* does not apply. *Id.*, citing *State v. Adams*, 9th Dist. No. 07CA0086, 2008-Ohio-4939, ¶ 10-12. Moreover, following the trial court's ruling on appellant's motion, the court instructed the jury to disregard Cox's comments about accessing documentation during trial that was previously requested but not produced. We presume the jury followed the curative instructions. *Harris* at ¶ 27, citing *State v. Garner*, 74 Ohio St.3d 49, 59 (1995).

{¶ 34} Thus, we do not find that the trial court abused its discretion in denying appellant's motion for a mistrial or that appellant was prejudiced by the circumstances in question. Accordingly, appellant's fourth assignment of error is overruled.

## IV. CONCLUSION

{¶ 35} Appellant's first, third, and fourth assignments of error are overruled, and appellant's second assignment of error is sustained. Accordingly, appellant's convictions are affirmed, and this matter is remanded to the Franklin County Court of Common Pleas for resentencing in accordance with the law and consistent with this decision.

*Judgment affirmed in part and reversed in part;*
*cause remanded for resentencing.*

BROWN and LUPER SCHUSTER, JJ., concur.