[Cite as *State v. Morgan*, 2014-Ohio-5661.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                              :

      Plaintiff-Appellee,                        :               No. 13AP-620
                                    (C.P.C. No. 12CR-5458)

v.                                                         :

                                         (REGULAR CALENDAR)

Raymond Morgan,                                            :

      Defendant-Appellant.                       :

---

D E C I S I O N

Rendered on December 23, 2014

---

*Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for
appellee.

*Timothy Young*, Ohio Public Defender, and *Charlyn Bohland,*
for appellant.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Raymond Morgan, appeals from a judgment entry of
the Franklin County Court of Common Pleas finding him guilty, pursuant to a guilty plea,
of one count of burglary, two counts of felonious assault with accompanying firearm
specifications, and one count of aggravated robbery with accompanying firearm
specification. For the following reasons, we affirm in part and reverse in part.

**I. Facts and Procedural History**

{¶ 2} This case originated as three separate complaints in the Franklin County
Court of Common Pleas, Division of Domestic Relations, Juvenile Branch ("juvenile
court") alleging appellant was a delinquent child. The first complaint charged appellant
with two counts of felonious assault, second-degree felonies, in violation of R.C.

2903.11(A)(2) if committed by an adult, with accompanying firearm specifications attached to each count. The second complaint charged appellant with one count of aggravated robbery, a first-degree felony, in violation of R.C. 2911.01(A)(1) if committed by an adult, one count of robbery, a second-degree felony, in violation of R.C. 2911.02(A)(1) if committed by an adult, one count of felonious assault, a second-degree felony, in violation of R.C. 2903.11(A)(1) if committed by an adult, and one count of kidnapping, a first-degree felony, in violation of R.C. 2905.01(A)(2) if committed by an adult, with accompanying firearm specifications attached to each count. The third complaint charged appellant with one count of receiving stolen property, a fifth-degree felony, in violation of R.C. 2913.51(A) if committed by an adult. Appellant was 16 years old at the time of the commission of the offenses and at the time the state filed the three complaints.

{¶ 3} By motions filed March 5, 15, and 27, 2012, the state moved the juvenile court, pursuant to Juv.R. 30 and R.C. 2152.12(B), to relinquish its jurisdiction and transfer the three cases to the general division of the common pleas court for criminal prosecution of appellant as an adult.

{¶ 4} At a hearing on June 14, 2012, appellant expressed a desire to the juvenile court to have his attorney removed from the case "[b]ecause he's not trying to help me go home." (June 14, 2012 Tr. 5.) The juvenile court determined appellant's counsel was providing adequate and appropriate representation for appellant and directed that appellant's counsel continue on in the case.

{¶ 5} The juvenile court conducted probable cause hearings for each of the three complaints and found there was probable cause to believe that appellant committed all of the charged offenses.

{¶ 6} On October 24, 2012, the juvenile court conducted an amenability hearing for each of three complaints. Appellant was represented by counsel at the hearing but did not have a parent or guardian present; his father died in January of that year and his mother died shortly before the amenability hearing. The juvenile court noted it had considered the psychological evaluation of Dr. Barbara Bergman recommending appellant is amenable to care and/or rehabilitation in the juvenile system. The court nonetheless noted "the particularly egregious nature of this gun violence crime spree," and concluded

appellant is not amenable to care or rehabilitation in the juvenile system. (Oct. 24, 2012 Tr. 17.) The juvenile court sustained the state's motion to relinquish jurisdiction to the general division of the common pleas court in an October 24, 2012 entry.

{¶ 7} Upon transfer, the general division of the common pleas court consolidated all three juvenile cases into a single case number. Following transfer of jurisdiction, the Franklin County Grand Jury returned a 13-count indictment reflecting the same charges listed in the juvenile court complaints.

{¶ 8} Appellant initially entered a plea of not guilty. On April 30, 2013, appellant entered a guilty plea to an amended complaint of one count of burglary, two counts of felonious assault enhanced with firearm specifications, and one count of aggravated robbery enhanced with a firearm specification. At the plea hearing, the prosecutor recited the pertinent facts.

{¶ 9} According to the stipulated facts, the offenses contained in appellant's indictment occurred in four separate incidents over the course of two days. On February 8, 2012, police received a report from Craig Youngman that someone had broken into his residence and stolen two semiautomatic handguns, a camera, and a camera lens. Later that same day, Bruce Sedlock was walking into his home through his front door when he heard a gunshot and realized he had been shot in the leg. He located a spent bullet on the kitchen floor, called police, and was transported to Grant Medical Center by ambulance.

{¶ 10} Approximately 30 minutes later, Eric Hayes exited his vehicle on Steward Avenue when he saw two males walk by him. He heard two gunshots and realized he had been shot. Hayes was also transported to Grant Medical Center where he underwent surgery to remove his spleen as a result of the gunshot wounds. Hayes did not get a clear look at the person who shot him.

{¶ 11} The next day, February 9, 2012, Jimmy White was walking alone on East Whittier Street when he passed appellant, R.D., and Joshua Morgan, appellant's brother. When White looked over his shoulder, he saw Joshua approaching him with a handgun which he pointed at White and demanded White's property. White pulled a utility knife from his pocket and stabbed Joshua in the neck while at the same time trying to wrestle the gun away from him. During the struggle for the gun, White was shot in the left leg.

White eventually succeeded in grabbing Joshua's gun only to realize appellant and R.D. were approaching him and R.D. was also holding a gun. White shot R.D. as he approached, and appellant and Joshua fled the scene.

{¶ 12} Through the course of their investigation, police were able to determine that appellant and R.D. were responsible for all four incidents while Joshua was only involved in the February 9, 2012 incident. The firearm used to shoot Sedlock, Hayes, and White was one of the weapons reported stolen from Youngman's residence. Additionally, police recovered Youngman's camera at the shared residence of appellant and Joshua.

{¶ 13} The trial court accepted appellant's guilty plea and sentenced him at a May 22, 2013 sentencing hearing to 3 years for the burglary conviction, 3 years each for the two felonious assault convictions with additional 3-year firearm specifications attached to each, and 3 years for the aggravated robbery conviction with an additional 3-year firearm specification. The trial court further ordered the 3-year burglary sentence to run concurrent with the two felonious assault and one aggravated robbery sentences, which are to be served consecutive to each other for a total sentence of 18 years imprisonment. The trial court journalized appellant's convictions and sentence in a May 23, 2013 judgment entry. Appellant did not timely appeal but requested leave to file a delayed appeal pursuant to App.R. 5(A). We granted appellant's motion for leave to file delayed appeal. *State v. Morgan*, 10th Dist. No. 13AP-620 (Jan. 16, 2014) (memorandum decision).

## II. Assignments of Error

{¶ 14} Appellant assigns the following five assignments of error for our review:

> I. The juvenile court committed plain error when it failed to appoint a guardian ad litem for [appellant's] amenability hearing, in violation of Juv.R. 4(B)(1) and R.C. 2151.281(A)(1).
>
> II. The trial court abused its discretion when it transferred [appellant's] case for criminal prosecution, in violation of R.C. 2152.12(B); Fifth and Fourteenth Amendments to the U.S. Constitution, and Article I, Section 10, Ohio Constitution.
>
> III. The juvenile court erred when it failed to investigate [appellant's] claim of ineffective assistance of defense counsel, in violation of the Sixth and Fourteenth Amendments to the

U.S. Constitution; and, Article I, Section 10, Ohio Constitution.

IV. The trial court erred when it sentenced [appellant] to consecutive sentences without complying with R.C. 2929.14(C)(4), in violation of his right to due process as guaranteed by the Fourteenth Amendment to the U.S. Constitution; and, Article I, Section 16, Ohio Constitution.

V. [Appellant] was denied the effective assistance of counsel, in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution; Section 10, Article I, Ohio Constitution.

## III. First Assignment of Error – Guardian Ad Litem

{¶ 15} In his first assignment of error, appellant argues it was reversible error for the juvenile court to fail to appoint a guardian ad litem for him at his amenability hearing.

{¶ 16} The parties disagree over the standard we should apply in reviewing the juvenile court's failure to appoint a guardian ad litem for appellant prior to the amenability hearing. Appellant asserts that because both R.C. 2151.281(A)(1) and Juv.R. 4(B)(1) use mandatory language for the appointment of a guardian ad litem when a juvenile has no parents, the juvenile court's failure to appoint a guardian ad litem is reversible error as a matter of law. The state responds that appellant did not request the appointment of a guardian ad litem, so we may review only for plain error.

{¶ 17} R.C. 2151.281 governs the appointment of a guardian ad litem in juvenile court proceedings. In relevant part, the statute provides that "[t]he court shall appoint a guardian ad litem, subject to rules adopted by the supreme court, to protect the interests of a child in any proceeding concerning an alleged or adjudicated delinquent child or unruly child when * * * [t]he child has no parent, guardian, or legal custodian." R.C. 2151.281(A)(1). Similarly, Juv.R. 4(B)(1) states that "[t]he court shall appoint a guardian *ad litem* to protect the interests of a child or incompetent adult in a juvenile court proceeding when * * * [t]he child has no parents, guardian, or legal custodian."

{¶ 18} This court has never addressed the issue of whether the juvenile court's failure to comply with the mandates in R.C. 2151.281(A)(1) and Juv.R. 4(B)(1) is reversible error as a matter of law or whether an appellate court can review only for plain error where there is no objection to the trial court's failure to comply with the statute and rule.

However, we have previously considered a trial court's failure to appoint a guardian ad litem in other circumstances. In *State v. Kendrick*, 10th Dist. No. 98AP-1305 (Sept. 30, 1999), we analogized the failure to appoint a guardian under Civ.R. 17(B) to the failure to appoint a guardian in the juvenile system under Juv.R. 4 and reviewed only for plain error where no request for a guardian ad litem was made. *Id.* Similarly, we applied a plain error analysis to an incompetent adult's failure to object to the level of participation of the guardian ad litem at trial. *In re K.J.D.,* 10th Dist. No. 12AP-652, 2013-Ohio-610, ¶ 50.

{¶ 19} We have found plain error in matters involving a guardian ad litem in juvenile court proceedings " 'only in the extremely rare case involving exceptional circumstances where error seriously affects the basic fairness, integrity, or public reputation of the judicial process itself.' " *In re A.L.*, 10th Dist. No. 07AP-638, 2008-Ohio-800, ¶ 24, quoting *In re McLemore*, 10th Dist. No. 03AP-714, 2004-Ohio-680, ¶ 11. Stated another way, we will conclude the juvenile court committed plain error by failing to appoint a guardian ad litem for appellant "only if we conclude that the alleged error seriously affected the 'basic fairness, integrity, or public reputation' of the proceedings below." *Id.*, citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus.

{¶ 20} This court has consistently declined to find plain error in matters involving a guardian ad litem where the record does not demonstrate prejudice to the appellant. In *Kendrick* this court stated: "the failure to appoint a guardian *ad litem* does not constitute reversible error where no request for a guardian *ad litem* is made or defendant cannot show prejudice" and noted "the record fails to even hint at that which a guardian *ad litem* could contribute, or how defendant was prejudiced by the lack of one." Similarly, in *K.J.D.* this court concluded that even if the limited level of the guardian ad litem's participation at trial amounted to error, the appellant "has not pointed to anything in the record suggesting the [guardian ad litem's] not participating in proceedings prejudiced her, much less demonstrated the level of prejudice necessary for plain error." *Id.* at ¶ 50, citing *In re Amber G. & Josie G.*, 6th Dist. No. L-04-1091, 2004-Ohio-5665, ¶ 17 (declining to presume prejudice and determining that even where a guardian ad litem was not appointed but clearly should have been, whether the error constitutes reversible error depends on "whether there was any prejudice by the failure to appoint a guardian ad litem").

{¶ 21} We are cognizant that some other appellate districts have concluded that an appellant need not object to the trial court's failure to appoint a guardian ad litem in order to warrant reversal. *In re K.B.*, 170 Ohio App.3d 121, 2007-Ohio-396, ¶ 12 (8th Dist.) (concluding that "the absence of an objection does not preclude a reversal due to the juvenile court's failure to appoint a [guardian ad litem] when required under R.C. 2151.281(A)(2) or Juv.R. 4(B)(2)"), citing *In re Etter*, 134 Ohio App.3d 484, 492 (1st Dist.1998); *In re Cook*, 11th Dist. No. 2003-A-0132, 2005-Ohio-5288, ¶ 30 (stating "the absence of an objection does not preclude a reversal due to the juvenile court's failure to appoint a guardian ad litem when required under R.C. 2151.281(A)(2) or Juv.R. 4(B)(2)," and determining the juvenile court abused its discretion when it did not appoint a guardian ad litem where "[a]n examination of the record clearly demonstrates at least the strong possibility of a conflict between appellant and his father"). *Id.* at ¶ 32. However, neither these cases nor the cases from this court squarely address the issue of a juvenile court's failure to appoint a guardian ad litem specifically under R.C. 2151.281(A)(1) or Juv.R. 4(B)(1). As the Fourth District recently explained, "[s]ome courts have held that a juvenile need not request a trial court to appoint a guardian *ad litem* or object to a court's failure to appoint one when a mandatory duty to do so exists." *In re D.A.G.*, 4th Dist. No. 13CA3366, 2013-Ohio-3414, ¶ 45, citing *In re Dennis*, 11th Dist. No. 2006-A-0040, 2007-Ohio-2432, ¶ 29. "Other courts have reviewed an appellant's failure to request the trial court to appoint a guardian *ad litem* or to object using a plain error analysis." *Id.*, citing *In re M.T.*, 6th Dist. No. L-09-1197, 2009-Ohio-6674, ¶ 14-15; *In re A.K.*, 9th Dist. No. 09CA0025-M, 2009-Ohio-4941, ¶ 8, *rev'd on other grounds*, *In re Cases Held for the Decision in D.J.S.*, 130 Ohio St.3d 253, 2011-Ohio-5349; *In re Smith*, 3d Dist. No. 14-05-33, 2006-Ohio-2788, ¶ 35; *In re McHugh Children*, 5th Dist. No. 2004CA00091, 2005-Ohio-2345, ¶ 37. The Fourth District has taken an approach less strict than plain error. *In re Slider*, 160 Ohio App.3d 159, 2005-Ohio-1457, ¶ 11 (4th Dist.). Thus, we recognize there is a lack of consistency among the various appellate districts throughout Ohio on this issue. However, given this court's precedent on matters more generally involving a guardian ad litem, we will review only for plain error and will not reverse unless appellant can demonstrate he suffered prejudice from the juvenile court's error.

{¶ 22} The record indicates appellant's father died in January 2012. Appellant's mother had attended each of appellant's hearings before the amenability hearing on October 24, 2012. However, at the October 24, 2012 hearing, appellant's counsel informed the juvenile court that appellant's mother had recently died. A woman who identified herself as appellant's "godsister" was present at his amenability hearing and appellant's counsel described her as "[a] very close friend of the family who's taken over the role of mom since her * * * recent death," but there is no indication in the record that this woman was appellant's legal guardian or custodian following the death of appellant's mother. (Oct. 24, 2012 Tr. 12.)

{¶ 23} Because appellant had no parent, guardian or legal custodian at the time of his amenability hearing, he falls within the provisions of R.C. 2151.281(A)(1) and Juv.R. 4(B)(1). Additionally, because the statute and rule both use mandatory language for the appointment of a guardian ad litem in this situation, we agree with appellant that it was error for the trial court to fail to appoint a guardian ad litem. *See, e.g.*, *Smith* at ¶ 34-35 (concluding that "because R.C. 2151.281(A) and Juv.R. 4(B) are mandatory, the juvenile court[']s failure to appoint a guardian ad litem when these provisions are applicable would constitute reversible error," but where the appellant failed to object to the absence of an appointed guardian ad litem, an appellate court will review only for plain error). We must next determine whether that error caused appellant to suffer prejudice sufficient to reverse on the basis of plain error.

{¶ 24} The state first argues there was no prejudice to appellant because appellant was represented by counsel. As the state acknowledges, however, "[t]he duty of a lawyer to his client and the duty of a guardian ad litem to his ward are not always identical and, in fact, may conflict." *In re Baby Girl Baxter*, 17 Ohio St.3d 229, 232 (1985). "The role of guardian ad litem is to investigate the ward's situation and then to ask the court to do what the guardian feels is in the ward's best interest," while "[t]he role of the attorney is to zealously represent his client within the bounds of the law." *Id.* Nonetheless, the state argues the roles of attorney and guardian ad litem can often coincide and that they do so here. The state relies on the Sixth District's decision in *M.T.* for the proposition that there is no prejudice from the juvenile court's failure to appoint a guardian ad litem where counsel safeguard's the client's rights and advocates in accordance with the client's

wishes. *Id.* at ¶ 17. The state argues that "[i]t is difficult to imagine that a [guardian ad litem] would have recommended anything other than that [appellant] should not be bound over—which is exactly what [appellant's] counsel argued at the amenability hearing," so there was no indication that appellant's "best interests" conflicted with counsel's role in protecting appellant's substantive and procedural rights. (Appellee's Brief, 15.) Thus, the state would have us conclude that because appellant "failed to demonstrate how a guardian ad litem would have acted differently or produced a different result," appellant is unable to establish prejudice sufficient to warrant reversal under a plain error standard. *M.T.* at ¶ 18.

{¶ 25} We agree generally that a guardian ad litem for appellant probably would have advocated for appellant's retention in the juvenile system rather than transfer to the general division of the common pleas court. Additionally, we have no way of knowing what a guardian would have argued because one was not appointed. *See, e.g.*, *State v. Roush*, 10th Dist. No. 12AP-201, 2013-Ohio-3162, ¶ 42 (concluding that in considering an ineffective assistance of counsel claim, "[b]ecause we do not know what [an uncalled witness] would have said if he testified at trial, we cannot find that the absence of the [witness'] testimony prejudicially affected the outcome of defendant's trial"). While appellant articulates in a general sense the important function that a guardian ad litem provides in juvenile court, outlining the general requirements set forth in Sup.R. 48(D), appellant does not articulate how, specifically, the juvenile court's failure to appoint a guardian ad litem here prejudiced him. In addition to being represented by counsel who advocated that appellant not be bound over for criminal prosecution, appellant also had the comprehensive and favorable psychologist's report from Dr. Bergman. Taking these considerations together, we agree with the state that appellant is unable to demonstrate prejudice from the juvenile court's failure to appoint him a guardian ad litem.

{¶ 26} Second, the state argues that the presence of appellant's self-identified "godsister" at the amenability hearing alleviated the necessity to appoint a guardian ad litem. While the extent of the godsister's role in appellant's life is unclear, we agree with the state that appellant cannot demonstrate "that the basic fairness of [his] trial was undermined or that its result was affected by the fact that" a family friend appeared to support appellant instead of a parent, guardian or legal custodian. *In re J.J.*, 10th Dist.

No. 06AP-495, 2006-Ohio-6151, ¶ 26.  While we are sympathetic to the fact that appellant faced the amenability hearing without a parent, guardian or legal custodian, we are reluctant to find plain error where appellant does not articulate how the juvenile court's error resulted in any prejudice to appellant.

{¶ 27} Appellant argues that even if we do not find reversible error from the trial court's failure to appoint a guardian ad litem, we must nonetheless reverse for the trial court's failure to comply with the notice requirements of R.C. 2152.12(G).  Under R.C. 2152.12(G), for transfer of cases from juvenile court, the juvenile court "shall give notice in writing of the time, place, and purpose of any hearing * * * to the child's parents, guardian, or other custodian and to the child's counsel at least three days prior to the hearing."  Similarly, Juv.R. 30(D) requires that "[n]otice in writing of the time, place, and purpose of any hearing held pursuant to this rule shall be given to the state, the child's parents, guardian, or other custodian and the child's counsel at least three days prior to the hearing, unless written notice has been waived on the record."

{¶ 28} The record shows the juvenile court sent notice of the amenability hearing to appellant's mother on October 19, 2012.  While the exact date of appellant's mother's death is unclear from the record, appellant's counsel filed a motion for a continuance on October 18, 2012, one day prior to the notice of amenability hearing, for the stated reason of "[f]uneral service for [j]uvenile's mother."  However, even if we were to agree with appellant that the juvenile court erred in not complying with the notice provisions of R.C. 2152.12(G) and Juv.R. 30(D), appellant once again does not demonstrate prejudice from this error.  As this court has noted, the purpose of R.C. 2152.12(G) is "to protect juveniles by informing their caregivers of any pending actions involving the juveniles so that the caregivers can offer assistance, guidance, and support to the juveniles."  *State v. Reynolds*, 10th Dist. No. 06AP-915, 2007-Ohio-4178, ¶ 12.  Appellant does not suggest he was unaware of the hearing or unprepared, nor does he articulate how the outcome of the proceeding would have been different had his mother received proper notice before her death.

{¶ 29} The statutory requirement to appoint a guardian ad litem in R.C. 2151.281(A)(1) is mandatory.  However, given that this court has required some indication of prejudice in cases involving the failure to appoint a guardian ad litem, and there is no

indication that appellant suffered any prejudice from the juvenile court's failure to appoint a guardian ad litem here, we cannot conclude this is one of those rare, exceptional cases in which the public's confidence in the judicial system has been undermined. Accordingly, because appellant cannot demonstrate plain error from the juvenile court's failure to appoint a guardian ad litem, we overrule appellant's first assignment of error.

## IV. Second Assignment of Error – Transfer of Jurisdiction

{¶ 30} In his second assignment of error, appellant argues the juvenile court abused its discretion when it transferred appellant's case to the general division of the common pleas court for criminal prosecution. R.C. 2152.12 governs the transfer of cases from juvenile court. Under R.C. 2152.12(A), certain cases are subject to mandatory bindover to the common pleas court. As applicable here, appellant was subject to the discretionary bindover provisions under R.C. 2152.12(B). An appellate court reviews a juvenile court's transfer of a case to the common pleas court for an abuse of discretion. *State v. Erwin*, 10th Dist. No. 09AP-918, 2012-Ohio-776, ¶ 7, citing *State v. Steele*, 10th Dist. No. 00AP-499 (June 28, 2001), and *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, ¶ 39. An abuse of discretion connotes a decision that is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 31} Pursuant to R.C. 2152.12(B), the juvenile court may transfer a juvenile to common pleas court if the juvenile court finds all of the following:

> (1) The child was fourteen years of age or older at the time of the act charged.
>
> (2) There is probable cause to believe that the child committed the act charged.
>
> (3) The child is not amenable to care or rehabilitation within the juvenile system, and the safety of the community may require that the child be subject to adult sanctions.

The statute further requires the juvenile court, in making the amenability determination, to consider whether the factors indicating the case should be transferred outweigh the factors indicating the case should remain in juvenile court. R.C. 2152.12(B)(3). Here, appellant argues the trial court abused its discretion in making its amenability finding under R.C. 2152.12(B)(3).

{¶ 32} R.C. 2152.12(D) lists the following factors that a juvenile court must consider in favor of transferring a juvenile to the general division of the common pleas court:

> (1) The victim of the act charged suffered physical or psychological harm, or serious economic harm, as a result of the alleged act.
>
> (2) The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.
>
> (3) The child's relationship with the victim facilitated the act charged.
>
> (4) The child allegedly committed the act charged for hire or as a part of a gang or other organized criminal activity.
>
> (5) The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of section 2923.12 of the Revised Code, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.
>
> (6) At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.
>
> (7) The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.
>
> (8) The child is emotionally, physically, or psychologically mature enough for the transfer.
>
> (9) There is not sufficient time to rehabilitate the child within the juvenile system.

{¶ 33} The juvenile court must then weigh the factors in R.C. 2152.12(D) against the factors listed in R.C. 2152.12(E) that weigh against transfer of jurisdiction, including:

> (1) The victim induced or facilitated the act charged.

(2) The child acted under provocation in allegedly committing the act charged.

(3) The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion of another person.

(4) The child did not cause physical harm to any person or property, or have reasonable cause to believe that harm of that nature would occur, in allegedly committing the act charged.

(5) The child previously has not been adjudicated a delinquent child.

(6) The child is not emotionally, physically, or psychologically mature enough for the transfer.

(7) The child has a mental illness or is a mentally retarded person.

(8) There is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety.

{¶ 34} In addition to considering the factors listed in R.C. 2152.12(D) and (E), the juvenile court "shall order an investigation into the child's social history, education, family situation, and any other factor bearing on whether the child is amenable to juvenile rehabilitation, including a mental examination of the child by a public or private agency or a person qualified to make the examination."  R.C. 2152.12(C).

{¶ 35} Appellant argues the juvenile court abused its discretion because it discounted Dr. Bergman's psychological report finding appellant was amenable to treatment and, instead, placed too great of weight on the nature of the offenses committed.  "Although the seriousness of the crime is not a factor specified under R.C. 2152.12(D), the juvenile court is permitted to consider it in making a discretionary bindover decision."  *Erwin* at ¶ 11, citing *State v. Watson*, 47 Ohio St.3d 93 (1989), syllabus.

{¶ 36} We are mindful that "the juvenile court enjoys wide latitude to retain or relinquish jurisdiction." *Watson* at 95. Further, courts can look to whether "the totality of the evidence supports a finding that the juvenile is not amenable to treatment." *Id.* The hearing transcript indicates the juvenile court expressly considered and weighed the factors both in favor of and against transfer. The court found four factors in favor of transfer: those listed in R.C. 2152.12(D)(1), (4), (5), and (8). By contrast, the juvenile court found no factors that weighed against transfer. Although appellant argues the juvenile court did not place enough emphasis on Dr. Bergman's report, the transcript indicates the juvenile court acknowledged Dr. Bergman's report but specifically found other factors outweighed her report, including "the nature of the acts," the fact that the "guns were acquired as a result of an [a]ggravated [b]urglary," and that the subsequent acts were "almost immediate and were totally random in nature resulting in * * * three gunshot[] victims." (Oct. 24, 2012 Tr. 16.) Ultimately, the juvenile court determined these acts showed a "blatant disregard for life, health and the safety of others in the community," and found "the need to secure and protect the safety of the community." (Oct. 24, 2012 Tr. 16-17.) In light of those other factors, the juvenile court "significantly discount[ed] the conclusions" of Dr. Bergman. (Oct. 24, 2012 Tr. 17.)

{¶ 37} While appellant disagrees with the juvenile court's decision to largely discount the findings of Dr. Bergman, the juvenile court "is not bound by expert opinion, and may assign any weight to expert opinion that it deems appropriate." *State v. West*, 167 Ohio App.3d 598, 2006-Ohio-3518, ¶ 30 (4th Dist.) The statutory scheme does not dictate how much weight must be afforded to any specific factor and, instead, rests the ultimate decision in the discretion of the juvenile court. Appellant's disagreement with the weight afforded the various statutory factors does not amount to an abuse of discretion.

{¶ 38} Appellant further argues the trial court abused its discretion in determining appellant acted as part of organized criminal activity under R.C. 2152.12(D)(4). Appellant argues that just because the complaints alleged appellant admitted to participating with co-defendants, that admission does not automatically suggest organized criminal activity. However, this court has previously concluded that a defendant's participation in an aggravated robbery along with one or more co-defendants is sufficient to find the incident

occurred as part of organized criminal activity. *See State v. Allen*, 10th Dist. No. 10AP-487, 2011-Ohio-1757, ¶ 30 (concluding defendant's participation in propping open the door at a restaurant where he worked to allow his armed co-defendants to enter the restaurant, take money from the cash registers and safe, and hold restaurant employees against their will was sufficient to conclude the incident occurred as part of organized criminal activity under R.C. 2929.12(B)(6) and (7)); *State v. Lucas*, 10th Dist. No. 10AP-923, 2011-Ohio-3450, ¶ 25 (concluding defendant's participation in an aggravated robbery of waiting in the car with another juvenile while two adults entered a home to rob the occupants was sufficient to determine the robbery occurred as part of organized criminal activity under R.C. 2152.12(D)(4)).  Thus, we are not persuaded by appellant's argument that the juvenile court abused its discretion in determining R.C. 2152.12(D)(4) weighed in favor of appellant's transfer to the general division of the common pleas court.

{¶ 39} Additionally, appellant argues the juvenile court should not have found R.C. 2152.12(D)(5) weighed in favor of transfer because there was not sufficient evidence before the juvenile court that it was appellant who actually possessed a firearm.  We note that it is unclear from the record whether appellant was the principal offender or whether he was complicit in the offenses, but the transcript indicates the state did not foreclose either possibility.  It is undisputed, however, that three victims suffered gunshot wounds as a result of these crimes.  Even if appellant was not the one to brandish or discharge the weapon, he was nonetheless complicit in the commission of the crimes.  R.C. 2923.03(F) (Ohio's complicity statute, stating that "[w]hoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender").  Thus, we do not agree with appellant that the trial court acted unreasonably in finding R.C. 2152.12(D)(5) weighed in favor of transfer.

{¶ 40} Lastly under this assignment of error, appellant argues the trial court acted unreasonably in failing to conclude that R.C. 2152.12(E)(3) applied to weigh against transfer because appellant was not the principal actor.  However, the state explicitly stated its theory for probable cause was that the state did not know which of the co-defendants was the shooter, but that the state was proceeding against appellant as though "he was complicit and/or the shooter."  (Aug. 9, 2012 Tr. 9.)  Thus, the record did not preclude the possibility that appellant was the principal offender, and we do not conclude the juvenile

court abused its discretion in failing to conclude R.C. 2152.12(E)(3) applied to weigh against transfer.

{¶ 41} Based on the foregoing reasons, we conclude the juvenile court did not abuse its discretion in determining appellant was not amenable to treatment within the juvenile system and in transferring appellant to the general division of the common pleas court for criminal prosecution. Accordingly, appellant's second assignment of error is overruled.

## V. Third Assignment of Error – Failure to Investigate Alleged Ineffective Assistance of Counsel

{¶ 42} In his third assignment of error, appellant argues the juvenile court erred when it failed to investigate appellant's claim of ineffective assistance of counsel.

{¶ 43} " 'Where, during the course of his trial for a serious crime, an indigent accused questions the effectiveness and adequacy of assigned counsel * * *, it is the duty of the trial judge to inquire into the complaint and make such inquiry a part of the record.' " *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, ¶ 68, quoting *State v. Deal*, 17 Ohio St.2d 17 (1969), syllabus. This " 'limited judicial duty arises only if the allegations are sufficiently specific; vague or general objections do not trigger the duty to investigate further.' " *Id.*, quoting *State v. Carter*, 128 Ohio App.3d 419, 423 (4th Dist.1998). The inquiry may be brief and minimal. *State v. Erwin*, 10th Dist. No. 09AP-918, 2010-Ohio-3022, ¶ 8.

{¶ 44} "To discharge a court-appointed attorney, the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel." *State v. Coleman*, 37 Ohio St.3d 286, 292 (1988), paragraph four of the syllabus. " '[M]ere hostility, tension and personal conflicts between attorney and client do not constitute a total breakdown in communication if those problems do not interfere with the preparation and presentation of a defense.' " *Erwin*, 2010-Ohio-3022, at ¶ 7, quoting *State v. Furlow*, 2d Dist. No. 03CA0058, 2004-Ohio-5279, ¶ 12.

{¶ 45} At a hearing on June 14, 2012, appellant's appointed counsel informed the juvenile court that during his meeting with appellant, appellant told the attorney that he intended to ask the court to have his counsel removed and for new counsel to be

appointed. Appellant's counsel asked the juvenile court to address appellant's concerns on the record. When the juvenile court gave appellant the opportunity to explain his concerns with his attorney, appellant stated his counsel was "not trying to help me go home" and that "it's everybody['s] story against mine[ ]." (June 14, 2012 Tr. 6.) The juvenile court then asked appellant if he had anything else he wished to add, and appellant gave a non-verbal response. After giving appellant the opportunity to explain his concerns with his counsel, the juvenile court indicated its own favorable impression of appellant's counsel, and stated:

> [Y]ou may be frustrated that you think this case is taking as long as it's taking but this is a prosecution not a persecution. You have the right to be represented by counsel. I think you're being adequately and appropriately represented. We're going through a lot of process here that is inures to your benefit. If we short circuit the process that could be very detrimental to you. I don't want that for you. You shouldn't want that for yourself. And I'm sure [appellant's counsel] doesn't want that to you.
>
> So on the basis of [appellant's counsel's] not trying to let me go home, I'm going to ignore your request and I'm going to direct that [appellant's counsel] continue to be your appointed counsel.

(Sic passim.) (June 14, 2012 Tr. 7.)

{¶ 46} First, we agree with the state that appellant's statement that his counsel was not trying to help him go home did not articulate sufficiently specific facts to trigger the juvenile court's duty to inquire. *Erwin*, 2010-Ohio-3022, at ¶ 11 (finding defendant's complaint that he "did not think [appointed counsel] was looking out for his best interest" was too general to require the inquiry contemplated in *Deal*, and noting the defendant did not "allege any specific instances where his court-appointed attorney inadequately represented him"). Additionally, even though appellant's remarks were not specific enough to require an inquiry, the juvenile court nonetheless gave appellant the opportunity to specifically explain his dissatisfaction with his counsel, which appellant declined to do. *Erwin*, 2010-Ohio-3022, at ¶ 10, citing *State v. Hibbler*, 2d Dist. No. 2001-CA-43, 2002-Ohio-4464, ¶ 15, citing *State v. Harris*, 6th Dist. No. L-92-039 (Nov. 27, 1992) (stating "[t]he accused bears the duty of announcing the grounds of the

motion" to have his counsel removed). Therefore, we conclude the juvenile court did not err in not conducting a more specific inquiry into appellant's dissatisfaction with his appointed attorney. Accordingly, we overrule appellant's third assignment of error.

## VI. Fourth Assignment of Error – Consecutive Sentences

{¶ 47} In his fourth assignment of error, appellant argues the trial court erred when it sentenced him to consecutive sentences without making the necessary findings required by R.C. 2929.14(C)(4).

{¶ 48} Initially, we note that appellant did not object to the imposition of consecutive sentences at the sentencing hearing, so our review is limited to plain error. Crim.R. 52(B); *State v. Wilson*, 10th Dist. No. 12AP-551, 2013-Ohio-1520, ¶ 8.

{¶ 49} Under R.C. 2929.14(C)(4), when a trial court sentences a defendant to consecutive sentences for multiple offenses, it must make specific findings of fact. In relevant part, the statute reads:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction * * *, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 50} Before imposing consecutive sentences, the trial court is required, under R.C. 2929.14(C)(4), to make three findings: " '(1) that consecutive sentences are necessary to protect the public from the future crime or to punish the offender; (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) that one of the subsections (a), (b), or (c) apply.' " *State v. Ayers*, 10th Dist. No. 13AP-371, 2014-Ohio-276, ¶ 12, quoting *State v. Roush* at ¶ 76. While the trial court "need not use talismanic words to comply with R.C. 2929.14(C)(4) before imposing consecutive sentences, the trial court must make clear on the record that it made the required findings." *State v. Jones*, 10th Dist. No. 14AP-80, 2014-Ohio-3740, ¶ 13, citing *State v. Revels*, 10th Dist. No. 12AP-831, 2014-Ohio-795, ¶ 10, citing *State v. Boynton*, 10th Dist. No. 12AP-975, 2013-Ohio-3794, ¶ 9.

{¶ 51} Here, the state concedes the trial court did not make the necessary findings under R.C. 2929.14(C)(4). The state argues there is no plain error here because appellant cannot show his sentence would have been different but for the trial court's failure to make the statutory findings. This court, however, has consistently determined a trial court's failure to make the findings required by R.C. 2929.14(C)(4) renders the " 'appellant's sentence * * * contrary to law and constitutes plain error.' " *Jones* at ¶ 16, quoting *Ayers* at ¶ 15, quoting *Wilson* at ¶ 18. *See also State v. Smith*, 10th Dist. No. 14AP-123, 2014-Ohio-3700, ¶ 7; *State v. Bailey*, 10th Dist. No. 12AP-699, 2013-Ohio-3596, ¶ 46; *State v. Fair*, 10th Dist. No. 13AP-901, 2014-Ohio-2788, ¶ 22; *State v. Adams*, 10th Dist. No. 13AP-783, 2014-Ohio-1809, ¶ 7; *State v. F.R.*, 10th Dist. No. 13AP-525, 2014-Ohio-799, ¶ 25. The record here demonstrates the trial court did not make the requisite statutory findings before imposing consecutive sentences.

{¶ 52} The state acknowledges this court's precedent but disagrees with this court's approach of finding plain error as a matter of law for a trial court's failure to make the findings required by R.C. 2929.14(C)(4). Additionally, the state argues R.C. 2953.08(C)(1) precludes appellate review of appellant's sentence because the trial court could have imposed the same 18-year sentence solely for the aggravated robbery conviction plus the 9 years imposed for the firearm specifications. The state relies on *State v. Chavez*, 8th Dist. No. 99436, 2013-Ohio-4700, ¶ 47, which held that "R.C. 2953.08(C)(1) limits review of consecutive sentences to situations where the combined consecutive sentence is greater

than the maximum sentence for any one conviction." In pertinent part, R.C. 2953.08(C)(1) states:

> In addition to the right to appeal a sentence granted under division (A) or (B) of this section, a defendant who is convicted of or pleads guilty to a felony may seek leave to appeal a sentence imposed upon the defendant on the basis that the sentencing judge has imposed consecutive sentences under division (C)(3) of section 2929.14 of the Revised Code and that the consecutive sentences exceed the maximum prison term allowed by division (A) of that section for the most serious offense of which the defendant was convicted. Upon the filing of a motion under this division, the court of appeals may grant leave to appeal the sentence if the court determines that the allegation included as the basis of the motion is true.

{¶ 53} The state asserts, based on the Eighth District's decision in *Chavez*, that the reference to subsection (C)(3) in the above-quoted language is a clerical error and the General Assembly must have intended to refer to R.C. 2929.14(C)(4). *Id.* Even assuming we agree with the state that the reference to subsection (C)(3) is a clerical error, we do not agree with the state's position that R.C. 2953.08(C)(1) precludes appellate review in this case. Based on the plain language of the statute, the right to appeal a sentence conferred by R.C. 2953.08(C)(1) is a right "[*i*]*n addition to* the right to appeal a sentence under division (A) or (B) of this section." (Emphasis added.) Thus, R.C. 2953.08(C)(3) does not limit the right to appeal under R.C. 2953.08(A) and (B), but, rather, provides additional grounds for relief.

{¶ 54} As relevant here, R.C. 2953.08(A)(4) specifically allows a defendant to appeal a sentence as a matter of right when "[t]he sentence is contrary to law." This court's precedent, outlined above, has made it clear that when a trial court imposes consecutive sentences without making the requisite findings in R.C. 2929.14(C)(4), that sentence is contrary to law. Accordingly, consistent with this court's precedent, we agree with appellant that the trial court committed plain error when it imposed consecutive sentences without first making the necessary findings in R.C. 2929.14(C)(4). Accordingly, we sustain appellant's fourth assignment of error.

## VII. Fifth Assignment of Error – Ineffective Assistance of Counsel

{¶ 55} In his fifth and final assignment of error, appellant argues he was denied the effective assistance of counsel. Specifically, appellant argues his counsel was ineffective at the amenability hearing in the juvenile court proceedings. Appellant does not argue he received ineffective assistance of counsel during the bindover proceedings in the general division of the common pleas court.

{¶ 56} In order to prevail on a claim of ineffective assistance of counsel, appellant must satisfy a two-prong test. First, he must demonstrate that his counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This first prong requires appellant to show that his counsel committed errors which were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* If appellant can so demonstrate, he must then establish that he was prejudiced by the deficient performance. *Id.* To show prejudice, appellant must establish there is a reasonable probability that, but for his counsel's errors, the result of the trial would have been different. A "reasonable probability" is one sufficient to undermine confidence in the outcome of the trial. *Id.* at 694.

{¶ 57} In considering claims of ineffective assistance of counsel, courts indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101. Appellant contends his trial counsel was ineffective in failing to call any witnesses to testify on his behalf at the amenability hearing. More specifically, appellant asserts his counsel should have (1) requested an expert witness to testify about the effects of the traumatic events in appellant's life, and (2) called character witnesses to demonstrate appellant's good character and explain why he should be retained in the juvenile system.

{¶ 58} First, we do not agree that appellant's counsel's failure to call an expert witness at the amenability hearing amounts to ineffective assistance of counsel. The juvenile court had before it Dr. Bergman's very thorough report that included the very information that appellant argues an expert witness would have provided. Additionally, the juvenile court had the presentence investigation report that contained additional information regarding appellant's background and the traumatic events of his life. Appellant does not articulate what additional information a supplementary expert would

have provided. *In re H.D.D.*, 10th Dist. No. 12AP-134, 2012-Ohio-6160, ¶ 59 (finding no ineffective assistance of counsel from trial counsel's failure to call an expert toxicologist where the appellant provided no information either in the trial court or on appeal as to what the expert's testimony might have been), citing *In re Graves*, 11th Dist. No. 99-G-2219 (June 23, 2000) (stating "[a]ppellant fails to demonstrate either by suggestion or through the record what favorable evidence existed which was not presented by counsel").

{¶ 59} To the extent appellant argues his counsel was ineffective in failing to call Dr. Bergman to testify in person, this decision may have been a strategic one on the part of counsel to introduce only the favorable information in the report and avoid any unfavorable information or surprises at the hearing. "Tactical or strategic trial decisions, even if ultimately unsuccessful, will not substantiate a claim of ineffective assistance of counsel." *State v. Ryan*, 10th Dist. No. 08AP-481, 2009-Ohio-3235, ¶ 77, citing *In re M.E.V.*, 10th Dist. No. 08AP-1097, 2009-Ohio-2408, ¶ 34.

{¶ 60} Second, appellant's argument that his counsel was ineffective in failing to call a character witness at the amenability hearing similarly fails. Again, "counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." *State v. Rippy*, 10th Dist. No. 08AP-248, 2008-Ohio-6680, ¶ 14, citing *State v. Treesh*, 90 Ohio St.3d 460, 490 (2001). Further, appellant merely speculates as to what a hypothetical character witness may have said during his or her testimony, but mere speculation as to what a witness might have testified to and how such testimony would have affected the hearing's outcome is insufficient to establish a claim of ineffective assistance of counsel. *Id.*, citing *State v. Wiley*, 10th Dist. No. 03AP-340, 2004-Ohio-1008, ¶ 30, citing *State v. Bradley*, 42 Ohio St.3d 136 (1989).

{¶ 61} Accordingly, appellant is unable to demonstrate his counsel was ineffective, nor does appellant demonstrate any prejudice from his counsel's alleged inadequacies. Because appellant has failed to satisfy the *Strickland* test, we overrule appellant's fifth and final assignment of error.

## VIII. Disposition

{¶ 62} Based on the foregoing reasons, we conclude the juvenile court did not commit plain error in not appointing a guardian ad litem, the juvenile court did not abuse

its discretion in transferring appellant to the general division of the common pleas court for criminal prosecution, the juvenile court did not err in failing to investigate appellant's claim of alleged ineffective assistance of counsel, and appellant did not receive ineffective assistance of counsel during his amenability hearing.  However, we also conclude the trial court committed plain error when it imposed consecutive sentences without first making the statutory findings required by R.C. 2929.14(C)(4).  Having overruled appellant's first, second, third, and fifth assignments of error, and having sustained appellant's fourth assignment of error, we affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas and remand the matter to that court for resentencing.

*Judgment affirmed in part, reversed in part,*
*and cause remanded with instructions.*

SADLER, P.J., and BROWN, J., concur.